[S.F. No. 24338. July 1, 1982.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
ALLEN LEROY ENGERT, Real Party in Interest.

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
JOHN WAYNE GAMBLE, Real Party in Interest.

798

**COUNSEL**

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien and William D. Stein,

Assistant Attorneys General, W. Eric Collins, Gloria F. DeHart and John B. Moy, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Sheldon Portman, Public Defender, and Michael A. Kresser, Deputy Public Defender, for Real Parties in Interest.

---

**OPINION**

**KAUS, J.**—The People petition for writs of mandate to compel respondent superior court to set aside orders striking, as unconstitutionally vague, special circumstance allegations based on subdivision (a)(14) of Penal Code section 190.2.

In separate prosecutions for murder, defendants and real parties in interest Engert and Gamble, challenged the special circumstance allegations that the murders were "especially heinous, atrocious, and cruel, manifesting exceptional depravity as described in Penal Code section 190.2(a)(14)." In each case respondent court ordered the allegation stricken on grounds that it was unconstitutionally vague and violative of due process in failing to "provide an ascertainable standard of conduct or workable standard of guilt."

An order of the trial court striking a portion of an information is appealable by the People under subdivision (a)(1) of Penal Code section 1238, providing for appeal of "[a]n order setting aside the indictment, information, or complaint." (See *People* v. *Burke* (1956) 47 Cal.2d 45, 53-54 [301 P.2d 241]; *People* v. *Espinoza* (1979) 99 Cal.App.3d 59, 65-68 [159 Cal.Rptr. 894]; also *People* v. *Braeseke* (1979) 25 Cal.3d 691, 699, 701 [159 Cal.Rptr. 684, 602 P.2d 384].) Therefore, a writ of mandate will lie (see *People* v. *Superior Court* (*Colbert*) (1978) 78 Cal.App.3d 1023, 1026 [144 Cal.Rptr. 599]; *People* v. *Superior Court* (*Brodie*) (1975) 48 Cal.App.3d 195, 198 [121 Cal.Rptr. 732]) and is deemed appropriate in this case because of the need for prompt and definitive interpretation of the statute.

Penal Code section 190.2 provides: "(a) The penalty for a defendant found guilty of murder in the first degree shall be death or confinement in state prison for a term of life without the possibility of parole in any

case in which one or more of the following special circumstances has been charged and specially found under Section 190.4, to be true:

"`. . . . . . . . . . . . . .`

"(14) The murder was especially heinous, atrocious, or cruel, manifesting exceptional depravity, as utilized in this section, the phrase especially heinous, atrocious or cruel manifesting exceptional depravity means a conscienceless, or pitiless crime which is unnecessarily torturous to the victim."[1]

The People contend that the statute suffers no constitutional defect. It is also urged that the same language has been upheld against constitutional challenge by the Supreme Court of the United States in *Proffitt* v. *Florida* (1976) 428 U.S. 242 [49 L.Ed.2d 913, 96 S.Ct. 2960] and that we are bound by that decision. We disagree on both counts and, therefore, deny the petitions for writs of·mandate.

## I

■ The fundamental policy behind the constitutional prohibition of vaguely worded criminal statutes was stated in *Lanzetta* v. *New Jersey* (1939) 306 U.S. 451, at page 453 [83 L.Ed. 888, at page 890, 59 S.Ct. 618]: "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." This court noted a further purpose of the prohibition in *People* v. *McCaughan* (1957) 49 Cal.2d 409, 414 [317 P.2d 974], where Justice Traynor stated, "A statute must be definite enough to provide a standard of conduct for those whose activities are proscribed *as well as a standard for the ascertainment of guilt by the courts called upon to apply it.*" (Italics added.) The generally accepted criterion is whether the terms of the challenged statute are "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." (*Connally* v. *General Const. Co.* (1926) 269 U.S. 385, 391 [70 L.Ed. 322, 328, 46 S.Ct. 126].)

■ It is difficult to assign any specific content to the pejoratives contained in subdivision (a)(14). Webster's New International Dictio-

---

[1]The subdivision has an obvious typographical flaw; there should be a period or semicolon rather than a comma after the first "depravity."

■

nary (2d ed.) defines heinous as "[h]ateful; hatefully bad; flagrant; odious; atrocious; giving great offense." Atrocious is defined as "[s]avagely brutal; outrageously cruel or wicked...." Cruel is defined as "[d]isposed to give pain to others; willing or pleased to hurt or afflict; savage, inhuman, merciless." Depravity is defined as "corruption; wickedness." The terms address the emotions and subjective, idiosyncratic values. While they stimulate feelings of repugnance, they have no directive content. The adverb "especially" adds nothing except greater uncertainty. The term "especial" is defined by Webster as "[n]ot general; distinguished among others of the same class as exceptional in degree."

None of these terms meets the standards of precision and certainty required of statutes which render persons eligible for punishment, either as elements of a charged crime or as a charged special circumstance. Indeed, the People concede as much. They state, in the petition for mandate, that "when these component terms of the challenged special circumstance are considered individually, the opportunity for varying interpretation thereby increases." It is argued, however, that when the component terms are considered "as a whole in the context of a first degree murder conviction," the standard is not vague.

To save the statute, the People point to the definition of terms contained in the statute itself, that "the phrase especially heinous, atrocious or cruel manifesting exceptional depravity means a conscienceless, or pitiless crime which is unnecessarily torturous to the victim."

It seems unlikely, for several reasons, that judicial construction could narrow the scope of the special circumstance on the basis suggested by the People. For one thing, as a discourse between the trial court and the prosecutor made clear, any attempt to determine what constitutes "necessary" torture—to clarify the meaning of "unnecessary"—appears to be futile.[2] Furthermore, even assuming that hurdle were overcome, to

---

[2]Moreover, torture as a component of murder is the subject of another special circumstance. (Pen. Code, § 190.2, subd. (a)(18).) Contrast the "unnecessarily torturous" language of subdivision (a)(14) with the straight-forward language of subdivision (a)(18) which also mandates death or life without possibility of parole when "[t]he murder was intentional and involved the infliction of torture. For the purpose of this section torture requires proof of the infliction of extreme physical pain no matter how long its duration." Because "unnecessarily torturous" must involve "torture," it is obvious that most, if not all, cases that fall within subdivision (a)(14) will also fall within subdivision (a)(18). Attempts to harmonize the two subdivisions only compound the vagueness problem.

find the special circumstance to be proved, the jury must agree that the crime was "conscienceless or pitiless"—terms that only add to the vagueness problem. As "unnecessarily" torturous assumes the existence of conduct that is necessarily torturous, so a conscienceless or pitiless first degree murder assumes the existence of such murder performed with conscience or pity. We cannot fathom what it could be. As we stated in *Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238, 249 [158 Cal. Rptr. 330, 599 P.2d 636], "vague statutory language is not rendered more precise by defining it in terms or synonyms of equal or greater uncertainty."

The conclusion is inescapable that the language of subdivision (a)(14) is so vague that men of common intelligence must guess at its meaning, and trial judges and jurors will look in vain for a standard for ascertainment of guilt or, in this case, for determination of the truth of the special circumstance.

## II

We must reject the People's argument that when the jury is determining the truth of the charged special circumstances, it is exercising a sentencing function and that, therefore, the requirements of due process for narrowness and clarity are lessened. (See *People* v. *Thomas* (1979) 87 Cal.App.3d 1014, 1022-1024 [151 Cal.Rptr. 483].) Proceedings do not move into the penalty, or sentencing, phase until after a defendant is convicted of first degree murder *and* the special circumstance is found to be true. (Pen. Code, §§ 190.1, 190.2.) In the California scheme the special circumstance is not just an aggravating factor: it is a fact or set of facts, found beyond reasonable doubt by a unanimous verdict (Pen. Code, § 190.4), which changes the crime from one punishable by imprisonment of 25 years to life to one which must be punished either by death or life imprisonment without possibility of parole.[3] The fact or set of facts to be found in regard to the special circumstance is no less crucial to the potential for deprivation of liberty on the part of the accused than are the elements of the underlying crime which, when found by a jury, define the crime rather than a lesser included offense or component. Thus, there is no reason why due process should not require the same specificity in defining the special circumstance that it requires in the definition of the crime itself.

---

[3]It is true, of course, that pursuant to subdivision (a) of section 190.3, in any later penalty determination, the jury may consider "the circumstances of the crime . . . and the existence of any special circumstances" as two of many relevant factors.

## III

The People contend that the issue we address has been decided by the Supreme Court in *Proffitt* v. *Florida, supra*, 428 U.S. 242. They fail, however, to consider the differing roles played by the aggravating circumstance in the Florida statutory scheme reviewed in *Proffitt* and the special circumstance in the California statute which we review here.

The People's argument also ignores the express limitation in the review undertaken by the high court—"whether the imposition of the sentence of death for the crime of murder under the law of Florida violates the Eighth and Fourteenth Amendments." (*Id.*, at p. 244 [49 L.Ed.2d at p. 918].) In contrast, our broad inquiry considers whether the special circumstance in the California statute is so vague and uncertain that a finding thereunder violates fundamental principles of due process. That death is a potential punishment upon a finding of the special circumstance is irrelevant to our determination.

*Proffitt* upheld the validity of Florida's death penalty statute against a constitutional challenge to its sentencing procedure. Under the Florida statute the trial judge—who is the sentencing authority—must weigh eight statutory aggravating factors against seven statutory mitigating factors to determine whether death or, alternatively, life with possibility of parole should be imposed on a defendant who has been convicted of first degree murder.[4]

As part of his argument that the sentencing procedures did not eliminate the "arbitrary infliction of death that was condemned in *Furman*" (*id.*, at p. 254 [49 L.Ed.2d at p. 924]), the defendant asserted that the enumerated aggravating and mitigating circumstances were so vague and so broad that virtually every capital defendant was a candidate for the death penalty. In upholding an aggravating circumstance which authorized the death penalty to be imposed if the crime is "especially

---

[4]The jury plays an advisory role in the Florida scheme. If a defendant is found guilty of a capital crime, an evidentiary hearing is held, after which the jury considers whether sufficient of the seven statutory mitigating circumstances exist to outweigh the aggravating circumstances found to exist. The jury is not required to make a finding as to the aggravating or mitigating circumstances—it is merely directed to consider each and based upon its considerations, by majority vote, to recommend either life or death to the sentencing judge. (*Proffitt, supra*, at pp. 248-249 [49 L.Ed.2d at pp. 920-921].)

Contrast the role of the special circumstance in the California statutory scheme (see II, above) where the jury must make a finding by unanimous vote as part of the guilt phase of the trial.

heinous, atrocious, or cruel," the Supreme Court noted that the state court had construed the provision as directed only to "the conscienceless or pitiless crime which is unnecessarily torturous to the victim."[5] The court then emphasized that it was not submitting the language to a general due process analysis: "As in *Gregg*, we examine the claims of vagueness and overbreadth in the statutory criteria only insofar as it is necessary to determine whether there is a substantial risk that the Florida capital-sentencing system, when viewed in its entirety, will result in the capricious or arbitrary imposition of the death penalty." (*Id.*, at p. 254, fn. 11 [49 L.Ed.2d at p. 924].)[6] It concluded: "We cannot say that the provision, as so construed, provides inadequate guidance *to those charged with the duty of recommending or imposing sentences in capital cases.*" (*Id.*, at pp. 255-256 [49 L.Ed.2d at p. 925].) (Italics added.) The court thus left open the question whether the statutory language is too vague to comport with due process in *defining* an offense or a special circumstance.

---

[5]*Proffitt, supra*, 428 U.S. at page 255 [49 L.Ed.2d at p. 924], quoting from *State* v. *Dixon* (1973) 283 So.2d 1, 9. The drafters of the special circumstance in subdivision (a)(14) obviously lifted its language from *Proffitt*. This coincidence, however, does not justify the People's conclusion that *Proffitt* is controlling.

[6]In *Gregg* v. *Georgia* (1976) 428 U.S. 153 [49 L.Ed.2d 859, 96 S.Ct. 2909], as a part of his challenge to imposition of the death penalty as cruel and unusual punishment, the defendant attacked a statutory aggravating circumstance which authorized the death penalty if the murder was "outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." He contended that it was so broad that capital punishment could be imposed in any murder case. The *Gregg* court stated: "In light of the limited grant of certiorari . . . we review the 'vagueness' and 'overbreadth' of the statutory aggravating circumstances only to consider whether their imprecision renders this capital-sentencing system invalid under the Eighth and Fourteenth Amendments because it is incapable of imposing capital punishment other than by arbitrariness or caprice." (*Id.*, at p. 201, fn. 51 [49 L.Ed.2d, p. 890].) The court continued: "It is, of course, arguable that any murder involves depravity of mind or an aggravated battery. But this language need not be construed in this way, and there is no reason to assume that the Supreme Court of Georgia will adopt such an open-ended construction. In only one case has it upheld a jury's decision to sentence a defendant to death when the only statutory aggravating circumstance found was that of the seventh [quoted above] . . . and that homicide was a horrifying torture-murder." (*Id.*)

The Georgia court's subsequent efforts to circumscribe the provision within constitutionally permissible bounds have met with mixed success. (See *Godfrey* v. *Georgia* (1980) 446 U.S. 420 [64 L.Ed.2d 398, 100 S.Ct. 1759].) In *Godfrey*, the United States Supreme Court reversed a judgment of death which was based on the aggravating circumstance found facially valid in *Gregg*: "A person of ordinary sensibility could fairly characterize almost every murder as 'outrageously or wantonly vile, horrible and inhuman.' Such a view may, in fact, have been one to which the members of the jury in this case subscribed. If so, their preconceptions were not dispelled by the trial judge's sentencing instructions. These gave the jury no guidance concerning the meaning of any of § (b)(7)'s terms. In fact, the jury's interpretation of § (b)(7) can only be the subject of sheer speculation." (*Id.*, pp. 428-429 [64 L.Ed.2d, pp. 406-407].)

Because of the differing contexts in which the provision is found and the different issues before the courts, *Proffitt* does not compel us to validate subdivision (a)(14) of Penal Code section 190.2 on due process grounds.[7]

## IV

 For the reasons stated, we conclude, therefore, that subdivision (a)(14) in Penal Code section 190.2 is unconstitutionally vague and violative of the due process clause of the Fourteenth Amendment of the United States Constitution and article I, sections 7, subdivision (a) and 15 of the Constitution of the State of California.[8]

 The People contend that we cannot rest our decision on the California Constitution. They point to article I, section 27, which provides: "All statutes of this state in effect on February 17, 1972, requiring, authorizing, imposing, or relating to the death penalty are in full force and effect, subject to legislative amendment or repeal by statute, initiative, or referendum.

"The death penalty provided for under those statutes shall not be deemed to be, or to constitute, the infliction of cruel or unusual punishments within the meaning of Article I, Section 6, nor shall such punish-

---

[7]Nor are we bound by the decision of the lower federal circuit court in *Spinkellink* v. *Wainwright* (5th Cir. 1978) 578 F.2d 582, cert den. (1979) 440 U.S. 976 [59 L.Ed.2d 796, 99 S.Ct. 1548], which construed the same Florida provision and upheld it against a due process challenge. As in *Proffitt*, the court viewed the language in the context of Florida's statutory scheme and concluded it provided adequate guidance to those charged with the duty of recommending or imposing sentences in capital cases.

The dissent refers to cases upholding language identical or similar to that upheld in *Proffitt* and *Spinkellink*. In each of the cases cited, however, the language at issue referred to an aggravating circumstance used for the purpose of sentencing. Contrast the decision in *State* v. *Payton* (1978) 361 So.2d 866, where the Louisiana Supreme Court found that the same language ("especially heinous, atrocious or cruel" manner) offended state constitutional guarantees of due process and fair trial when adopted as an element of first or second degree murder offenses. The court stated: "[A]lthough the question of whether the crime was committed in an especially heinous, atrocious or cruel manner is an acceptable factor, among others, to be considered for purposes of sentencing, *Gregg* v. *Georgia*, 428 U.S. at p. 201, 96 S.Ct. 2909; *Proffitt* v. *Florida*, 428 U.S. at 254-256, 96 S.Ct. 2960, *these terms are too vague to serve as constitutionally adequate elements within the definition of a criminal offense.*" (*Id.*, at p. 871; italics added.)

[8]To the extent that the opinion of the Court of Appeal in *Allen* v. *Superior Court* (1980) 113 Cal.App.3d 42 [169 Cal.Rptr. 608] conflicts with our decision, it is disapproved.

ment for such offenses be deemed to contravene any other provision of this constitution."

The People argue that the section—enacted by initiative after this court's decision in *People* v. *Anderson* (1972) 6 Cal.3d 628 [100 Cal. Rptr. 152, 493 P.2d 880]—insulates the death penalty against any state constitutional defect. The restriction of review, it is urged, applies not only to the validity of the death penalty as such but also to laws, substantive and procedural, relating to its administration and imposition. In the People's view, "all statutes relating to the death penalty, including those setting out the circumstances under which it applies and the procedures for applying it" are valid insofar as the state Constitution is concerned, and this court is precluded from determining, on state grounds, whether the special circumstance statute at issue meets our due process requirements of certainty and specificity.

Section 27 itself does not compel the interpretation sought by the People; it states simply that "such punishment"—i.e., death—shall not be deemed to contravene state constitutional provisions. Our determination that the special circumstance here in question is void for vagueness is in no way premised on the fact that death is one of the two punishments that may result from its application. The thrust of our decision is that no person should face the potential loss *either of liberty or life* based on statutory language so vague that the person's fate is left to the vagaries of individual judges or individual jurors. Inasmuch as section 27 is directed, by its terms, to insulation of "the *death penalty* provided for under those [reinstated] statutes" (italics added), it does not, on its face, preclude review on state due process grounds.

Further, we are not persuaded that the "legislative history" supports the People's reading of section 27. They point to the election brochure arguments accompanying the provision to suggest that the drafters and proponents intended an absolute restriction on state constitutional review of any statute that provided for the penalty of death.

The detailed analysis of the legislative counsel[9] first noted that adoption of the measure would prevent any provision of the state Constitution from *prohibiting* the death penalty. Then, in obvious reference to the first sentence of section 27 and in an attempt to explain to the elec-

---

[9]See Ballot Pamphlet, Proposed Amendments to California Constitution with argument to voters, General Election (Nov. 7, 1972) pages 42-44.

torate what statutes were being reinstated and why, the legislative counsel continued: "If this measure is adopted, every statutory law of California relating to the death penalty that was rendered ineffective by the decision of the California Supreme Court [*People* v. *Anderson*] would be reinstated (subject to amendment or repeal) insofar as their [*sic*] validity under the California Constitution is concerned." (Ballot Pamp., *supra*, p. 42.) Legislative counsel explained that the United States Supreme Court had invalidated death penalty statutes where judges or juries were given uncontrolled discretion, but that the United States court had not precluded the imposition of the death penalty in all cases. Counsel concluded: "This measure would, therefore, make effective the statutes of this state relating to the death penalty to the extent permitted under the United States Constitution." (*Id.*, at p. 42.)

In *People* v. *Anderson, supra,* 6 Cal.3d 628, we had held that death was an impermissibly cruel punishment, unnecessary to any legitimate goal of the state and incompatible with the dignity of man and the judicial process. We invalidated the punishment under former article I, section 6 (now § 17) of the California Constitution, proscribing cruel or unusual punishment. The 1972 initiative was intended simply to cancel the holding of *Anderson*, to clarify that the penalty of death does not violate any provision of the California Constitution: e.g., it is not cruel and unusual punishment; it does not, per se, violate the state due process clause; it does not, per se, deprive individuals of equal protection.

As we stated in *People* v. *Frierson* (1979) 25 Cal.3d 142, 185 [158 Cal.Rptr. 281, 599 P.2d 587], "The clear intent of the electorate in adopting section 27 was to circumvent *Anderson* by restoring the death penalty *to the extent permitted by the federal Constitution* ...." We concluded that "properly construed, section 27 validates the death penalty *as a permissible type of punishment* [italics added] under the *California* Constitution." (*Id.*, at p. 186.)

Placing the legislative history in perspective, *Frierson* makes it clear that section 27 was not intended to insulate a death penalty statute from the general strictures of the state Constitution, including the protection against unduly vague criminal statutes. Nowhere in the section or the legislative history is there any indication that the drafters or proponents intended to affect the continuing applicability of the state Constitution in death penalty trials insofar as the defect in the statute in question does not relate to the death penalty per se. There is no intimation, for example, that the drafters intended that a statute which

purported to deny counsel in capital cases or a statute which provided for a trial by six, not twelve, jurors in capital cases would be beyond the reach of the state Constitution. The legislative history expresses the contrary. An election brochure argument by then State Senator George Deukmejian reassured the electorate that guarantees of counsel and fair trial were unaffected by the initiative: "Our criminal legal system with its overriding concern for the rights of the accused, insures a fair trial to every person charged with murder regardless of his wealth, education or race. The public provides competent defense counsel and all incidents of defense free of charge to those who cannot afford them." (Ballot Pamph., *supra*, at p. 43.)

We must conclude that section 27 was not intended to insulate every potential capital case from the requirement of state constitutional due process. We base our conclusion not only on the language of the section and its relevant legislative history. We are also driven to it by the realization that the logical extension of the People's interpretation would produce absurd results. One example will suffice: We determined in *In re Newbern* (1960) 53 Cal.2d 786 [3 Cal.Rptr. 364, 350 P.2d 116], that the "common drunk" provision of the vagrancy law was void for vagueness, precluding imposition of a county jail term. Logically, it follows from the People's submission that under section 27 of article I the same statute would be immune from state constitutional review if the penalty for being a common drunk were death.

The alternative writ is discharged; the petition for peremptory writ is denied.

Bird, C. J., Mosk, J., and Broussard, J., concurred.

NEWMAN, J.—I concur, except that I would rely solely on the California Constitution.

RICHARDSON, J.—I respectfully dissent. The majority invalidates a provision of the 1978 death penalty law which creates the following "special circumstance" allowing imposition of death or life imprisonment without parole: "(14) The murder was especially heinous, atrocious, or cruel, manifesting exceptional depravity, as utilized in this section, the phrase especially heinous, atrocious or cruel manifesting exceptional depravity means a conscienceless, or pitiless crime which is unnecessarily torturous to the victim." (Pen. Code, § 190.2, subd. (a).)

The majority finds that the terms "heinous," "atrocious," "cruel" and "depravity" are unconstitutionally vague because they "address the emotions and subjective, idiosyncratic values [lacking] directive content." (*Ante*, p. 802.) Moreover, the majority holds that the definitional phrase ("a conscienceless, or pitiless crime which is unnecessarily torturous to the victim") "only add[s] to the vagueness problem." (*Ante*, p. 803.)

It is significant that if an insurmountable "vagueness problem" truly exists, we are the only court to discern it. My research discloses that *all other courts which have considered the issue, including the United States Supreme Court, have uniformly upheld identical or substantially identical language defining special or aggravating circumstances in state death penalty legislation* as against similar vagueness attacks. These cases have sustained the following applicable language: (*Proffitt v. Florida* (1976) 428 U.S. 242, 255-256 [49 L.Ed.2d 913, 924-925, 96 S.Ct. 2960] ["especially heinous, atrocious or cruel"]; *Spinkellink v. Wainwright* (5th Cir. 1978) 578 F.2d 582, 611 [same], cert. den. (1979) 440 U.S. 976 [59 L.Ed.2d 796, 99 S.Ct. 1548]; *Allen v. Superior Court* (1980) 113 Cal.App.3d 42, 50-58 [169 Cal.Rptr. 608] [same]; *Burrows v. State* (Okla.App. 1982) 640 P.2d 533, 542 [same]; *State v. Clark* (La. 1980) 387 So.2d 1124, 1132, cert. den. (1981) 449 U.S. 1103 [66 L.Ed.2d 830, 101 S.Ct. 900] ["especially heinous, atrocious or cruel manner"]; *Coleman v. State* (Miss. 1979) 378 So.2d 640, 648 ["especially heinous, atrocious or cruel"]; *State v. Dicks* (Tenn. 1981) 615 S.W.2d 126, 131-132, cert. den. (1981) 454 U.S. 933 [70 L.Ed.2d 240, 102 S.Ct. 431] ["especially heinous, atrocious or cruel in that it involved torture or depravity of mind"]; *State v. Dixon* (Fla. 1973) 283 So.2d 1, 9, cert. den. (1974) 416 U.S. 943 [40 L.Ed.2d 295, 94 S.Ct. 1950] ["especially heinous, atrocious or cruel"]; *Hopkinson v. State* (Wyo. 1981) 632 P.2d 79, 153-154, cert. den. (1982) 455 U.S. 922 [71 L.Ed.2d 463, 102 S.Ct. 1280] [same]; *State v. Goodman* (1979) 298 N.C. 1 [257 S.E.2d 569, 585] [same]; *State v. Ortiz* (1981) 131 Ariz. 195 [639 P.2d 1020, 1031] ["especially heinous, cruel or depraved"]; *State v. Osborn* (1981) 102 Idaho 405 [631 P.2d 187, 199-200] ["especially heinous, atrocious or cruel, manifesting exceptional depravity"]; *State v. Simants* (1977) 197 Neb. 549 [250 N.W.2d 881, 891], cert. den. (1977) 434 U.S. 878 [54 L.Ed.2d 158, 98 S.Ct. 231] ["especially heinous, atrocious or cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence"].) I have found no cases expressing a contrary view based upon the appropriate standards of vagueness, and I cannot presume that the Supreme Court (having authored them), and the highest courts of our sister states (being mandat-

ed to apply them), are uniformly insensitive to these standards, or to the semantic and legal nuances of the statutory language.

The majority attempts to distinguish the foregoing cases on the ground that they involve statutory definitions of "aggravating circumstances used for the purpose of sentencing," rather than (as here) "special circumstances" authorizing imposition of the death penalty. (*Ante,* p. 806, fn. 7.) To the contrary, a careful scrutiny of these cases discloses that in many of them, the so-called "aggravating circumstances" were not mere discretionary sentencing factors but indeed were statutory *prerequisites* to the imposition of the death penalty, functionally equivalent to the "special circumstances" of the California statute. (See, e.g., *Hopkinson, supra,* 632 P.2d at p. 153; *Osborn, supra,* 631 P.2d at p. 199, fn. 9.)

The majority suggests that *State* v. *Payton* (La. 1978) 361 So.2d 866, supports its attempt to distinguish the cases. In fact the opposite is true. *Payton* held that the "heinous" standard was unduly vague *for purposes of defining the substantive offense of murder*, but upheld that standard for purposes of determining whether the requisite "aggravating circumstances" existed to authorize the death penalty. Though denominated "aggravating circumstances," these statutory factors parallel the "special circumstances" of the California act, both in form and function. (Compare the factors listed in *Payton,* 361 So.2d at p. 868, with those described in § 190.2 of the Cal. Pen. Code.)

The courts in sister states have employed an analytical approach which is dramatically different from that adopted by the majority herein. Rather than seeking possible difficulties with, or anomalies in, the statutory language, every other court than ours has construed that language in such a manner as to *uphold*, not invalidate, the provision. Two recent cases are illustrative. Only last year the Supreme Court of Arizona in *Ortiz* had this to say about a statute creating an aggravating circumstance for murder which is "especially heinous, cruel, or depraved": "We have objectively defined the relevant terms: a murder is 'heinous' if 'hatefully or shockingly evil;' 'cruel' if 'disposed to inflict pain esp. in a wanton, insensate or vindictive manner: sadistic;' and 'depraved' if 'marked by debasement, corruption, perversion or deterioration.' [Citation.] Cruelty focuses on the sensations of the victim before death, depravity focuses on the murderer's state of mind, and heinousness focuses on society's view of the murder as compared to other murders. To use this aggravating circumstance, the trial court must

find that the murder is *especially* heinous, cruel, or depraved. [Citation.] We believe these standards satisfy *Godfrey* [v. *Georgia* (1980) 446 U.S. 420 (64 L.Ed.2d 398, 100 S.Ct. 1759)] and that the especially cruel, heinous, and depraved aggravating circumstance has not been defined in an unconstitutionally broad and vague manner." (639 P.2d at p. 1031, italics in original.)

In similar fashion, the Supreme Court of North Carolina in its 1979 *Goodman* case, analyzed substantially identical language: "While we recognize that every murder is, at least arguably, heinous, atrocious, and cruel, we do not believe that this subsection is intended to apply to every homicide. By using the word 'especially' the legislature indicated that there must be evidence that the brutality involved in the murder in question must exceed that normally present in any killing before the jury would be instructed upon this subsection. [Citations.]

"The Florida provision concerning this aggravating factor is identical to ours. Florida's Supreme Court has said that this provision is directed at 'the conscienceless or pitiless crime which is unnecessarily torturous to the victim." [Citations.] Nebraska has also adopted the Florida construction of this subsection. Both Florida and Nebraska have limited the application of this subsection to acts done to the victim during the commission of the capital felony itself. [Citations.] We too believe that this is an appropriate construction of the language of this provision." (257 S.E.2d at p. 585.)

Unlike the majority in the present case, the foregoing courts have uniformly attempted, with apparent success, to construe the language at issue in a reasonably specific manner to avoid constitutional objections. Surely we have the same obligation. We have long held that legislative enactments such as Penal Code section 190.2, subdivision (a), "come before us clothed with a presumption of constitutionality. 'All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality *clearly, positively* and *unmistakably* appears . . . .'" (*In re Dennis M.* (1969) 70 Cal.2d 444, 453 [75 Cal.Rptr. 1, 450 P.2d 296], italics added; see *Lockheed Aircraft Corp.* v. *Superior Court* (1946) 28 Cal.2d 481, 484 [171 P.2d 21, 166 A.L.R. 701].)

We recently sounded the appropriate interpretive note: "The judiciary bears an obligation to 'construe enactments to give specific content to

terms that might otherwise be unconstitutionally vague.' [Citation.] Thus we have declared that 'A statute will not be held void for uncertainty if any reasonable and practical construction can be given its language.' [Citation.] If by fair and reasonable interpretation we can construe section 647, subdivision (a), to sustain its validity, we must adopt such interpretation [citations] ...." (*Pryor v. Municipal Court* (1979) 25 Cal.3d 238, 253 [158 Cal.Rptr. 330, 599 P.2d 636].)

In my view, the dissenting opinion of Justice Poché of the Court of Appeal in this case correctly analyzed the issue before us, and I fully support his reasoning: "I am not convinced that subsection 14 of Penal Code section 190.2, subdivision (a) is vague, much less that it is unconstitutionally vague. That provision, which is part of an initiative measure approved by the voters in 1978, carries a strong presumption of constitutionality. It must be upheld unless its unconstitutionality 'clearly, positively and unmistakably appears.' (*In re Dennis M.* (1969) 70 Cal.2d 444, 453 [75 Cal.Rptr. 1, 450 P.2d 296].)

" . . . . . . . . . . . . . . . . .

"Due process commands that a penal statute must be definite enough to provide both a standard of conduct for those whose activities are proscribed and for the ascertainment of guilt. The statute involved here meets that standard. The notice given by the Penal Code is abundantly clear: do not commit murder in the first degree because if you do you may find yourself subject to death or lifetime behind bars if the killing is accompanied by one or more of the special circumstances set forth in Penal Code section 190.2. What is being forbidden is murder. Once a person decided to engage in that clearly defined activity it is difficult to believe that he or she has any real need, much less constitutional right, to the same sort of precision with respect to the nature of the 'special circumstances' that will elevate that murder to one that can be so punished. Once a person decides to murder another his choice of methods is not within the ambit of protected activity. If the statutory description of the special circumstance is less than photo precise, it does not chill that murderer in the exercise of his First Amendment rights. Quite to the contrary, that alleged lack of specificity may serve a very real social good in helping to dissuade the potential killer from either committing the crime or committing it in a way that could be characterized as heinous, atrocious or cruel, manifesting exceptional depravity.

"But even if the due process clause requires the same specificity in defining special circumstances as it requires in the definition of the

crime itself, that demand has been met. Is there any doubt that a juror or a potential murderer can determine what is meant by 'a conscienceless or pitiless crime which is unnecessarily torturous to the victim'? These terms define themselves. They have no different meaning in law than they have when used in ordinary conversation. The idea intended to be expressed by these words cannot be made more clear by any other judge-blessed words in the English language, except by an all inclusive listing of specific examples."

In *Proffitt* v. *Florida, supra,* 428 U.S. 242, the United States Supreme Court upheld substantially identical language in the Florida death penalty law, rejecting a vagueness contention similar to that which is adopted by today's majority. The majority attempts to distinguish *Proffitt* because (1) the Florida statute is procedurally different from the California act, and (2) the high court "left open" the vagueness issue as it relates to the specificity needed to define an offense or special circumstance. (*Ante,* p. 804.) To the contrary, I find no significant differences between the two state laws (see *People* v. *Frierson* (1979) 25 Cal.3d 142, 177-180 [158 Cal.Rptr. 281, 599 P.2d 587]) and nothing in *Proffitt* purports to leave unreached any issues of this kind.

In any event, the majority, in familiar fashion, has precluded any high court review of the vagueness question as applied to section 190.2, subdivision (a), by its reliance upon both federal and *state* constitutional provisions to justify its holding. In my view, the majority's reliance upon the state Constitution, thereby shutting the door to the People who might otherwise have sought further review, frustrates the spirit, if not the letter, of article I, section 27 of the California Constitution, which validated the death penalty laws in this state. As we carefully observed in *Frierson,* the people adopted that constitutional provision in November 1972 for the purpose of "reinstating the death penalty to the extent permitted by *federal* constitutional law." (P. 186, italics added.) I have no reasonable doubt that the statutory provision at issue here is constitutional under federal law. (*Proffitt* v. *Florida, supra,* 428 U.S. at pp. 255-256 [49 L.Ed.2d at pp. 924-925].)

I would issue the peremptory writs.

Petitioner's application for a rehearing was denied July 28, 1982. Richardson, J., was of the opinion that the application should be granted.