[No. A028979. First Dist., Div. Four. July 18, 1986.]

THE PEOPLE, Plaintiff and Appellant, v.
BOBBY JOE BUCKLEY, Defendant and Respondent.

COUNSEL

John K. Van de Kamp, Attorney General, Linda Ludlow and Morris Lenk, Deputy Attorneys General, for Plaintiff and Appellant.

James R. Jenner, Public Defender, David L. Andersen and Scott A. Sugarman, Assistant Public Defenders, for Defendant and Respondent.

OPINION

**SABRAW, J.**—In this appeal we determine that when an information charges murder in the first degree with the special circumstance of intentionally killing a peace officer, the defendant is not entitled to a pretrial determination of the facial constitutionality of subjecting to the death penalty a defendant who reasonably should have known that the victim he intentionally killed was a peace officer.

On January 11, 1983, eight police officers of the Oakland Police Department went to 1717 Peralta Street to serve a search warrant for the recovery of narcotics. It was about 8:35 p.m. The front door of 1717 Peralta Street is located on an alleyway which was dark at the time. When the officers were about ready to leave the residence, they heard a horn honking outside on the street where a car was double parked. Two of the officers left the house to approach the car. The officers walked out of the dark alley into the lighted street and Officer Irizarry said, "Police, we want to talk to you." In less than a second, the person in the car drew a handgun and shot Officer Irizarry who died of the wound. The other officer, Sergeant Chinn, fired at

the car which pulled away. Within minutes, the car was stopped and petitioner got out of the car and fell to the ground. He had been shot in the face and hand.

An information was filed charging Bobby Joe Buckley with first degree murder (Pen. Code, § 187[1]) and alleging as a special circumstance that the defendant knew or reasonably should have known the victim was a peace officer engaged in the performance of his duties (§ 190.2, subd. (a)(7)). Defendant demurred to the portion of the special circumstance that permits a death sentence if the defendant "reasonably should have known" that the victim was a peace officer. The court sustained the demurrer and the People appeal (§ 1238, subd. (a)(2)).

The question presented by defendant's demurrer and argued in the parties' briefs is whether use of the so-called "reasonable-man" standard[2] as a criterion for subjecting a defendant to the death penalty constitutes cruel and unusual punishment. By invitation of this court the parties also have submitted letter briefs concerning whether the trial court's judgment striking part of the special circumstance is premature. Because we conclude that the trial court's action is premature, we find it unnecessary to reach the merits of defendant's constitutional claim.

The People argue that the trial court's ruling was premature because defendant may never be subjected to the death penalty on the basis of the challenged circumstance and that a determination of the constitutional validity of a punishment should await its actual imposition (e.g., *People* v. *Dillon* (1983) 34 Cal.3d 441 [194 Cal.Rptr. 390, 668 P.2d 697]). The defense concedes (1) that if defendant receives the death penalty upon a finding that he intentionally and knowingly killed a peace officer, such punishment would not be cruel or unusual, and (2) that defendant is not entitled to a pretrial determination of the validity of a sentence of life imprisonment without possibility of parole for the killing of a peace officer by one who reasonably should have known that the victim was a peace officer. However, relying on *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862], defendant maintains that because a defendant who is not subject to the death penalty is also not subject to life imprisonment without possibility of parole, a pretrial challenge to the special circumstance as the basis for subjecting him to the death penalty is not premature.

---

[1]All further statutory references are to the Penal Code.

[2]Defendant concedes that the criminal negligence standard requires something more than ordinary negligence applicable in the civil context, i.e., that the negligence must be "gross, wanton or reckless" (e.g., *People* v. *Watson* (1981) 30 Cal.3d 290, 296 [179 Cal.Rptr. 43, 637 P.2d 279]; *People* v. *Penny* (1955) 44 Cal.2d 861, 879-880 [285 P.2d 926]). For convenience the criminal negligence standard is referred to as the "reasonable-man" standard.

## Discussion

We start our analysis with a review of the statutory scheme for the imposition of the death penalty or life without possibility of parole in first degree murder cases.

Section 190 provides: "Every person guilty of murder in the first degree shall suffer death, confinement in state prison for life without possibility of parole, or confinement in state prison for a term of 25 years to life. The penalty to be applied shall be determined as provided in Sections 190.1, 190.2, 190.3, 190.4, and 190.5."

Section 190.1, "the statute's procedural exordium" (*Owen* v. *Superior Court* (1979) 88 Cal.App.3d 757, 759 [152 Cal.Rptr. 88]), describes the provisions to come as applicable to "[a] case in which the death penalty may be imposed," and provides for trial in separate phases as follows:

"(a) The question of the defendant's guilt shall first be determined. If the trier of fact finds the defendant guilty of first degree murder, it shall at the same time determine the truth of all special circumstances charged as enumerated in Section 190.2 . . . ."

Section 190.2 sets forth special circumstances which, if charged and found to be true, require the penalty for a defendant found guilty of first degree murder to be either death or confinement in prison for life without possibility of parole. That section provides in pertinent part:

"(a) The penalty for a defendant found guilty of murder in the first degree shall be death or confinement in state prison for a term of life without the possibility of parole in any case in which one or more of the following special circumstances has been charged and specially found under section 190.4[3] to be true:

". . . . . . . . . . . . . . . . . . . . . . .

"(7) The victim was a peace officer . . . who, while engaged in the course of the performance of his duties was intentionally killed, and such

---

[3]Section 190.4, subdivision (a), provides that if the trier of fact finds the defendant guilty of first degree murder, "the trier of fact shall also make a special finding on the truth of each alleged special circumstance. The determination of the truth of any or all of the special circumstances shall be made . . . on the evidence presented at the trial. . . . [¶] If the trier of fact finds that any one or more of the special circumstances enumerated in Section 190.2 as charged is true, there shall be a separate penalty hearing, . . . ."

defendant knew or reasonably should have known that such victim was a peace officer engaged in the performance of his duties; . . ."[4]

As section 190.1 states, the statutory scheme applies to cases in which the death penalty may be imposed. In *Carlos, supra,* 35 Cal.3d 131, the defendant sought a writ of prohibition to bar his trial on the felony-murder aiding and abetting special circumstance (§ 190.2, subds. (a)(17), (b)) on grounds that the evidence failed to show that he intended to kill or to aid a killing (35 Cal.3d at p. 136), as the United States Supreme Court in *Enmund* v. *Florida* (1982) 458 U.S. 782 [73 L.Ed.2d 1140, 102 S.Ct. 3368] held, was required for imposition of the death penalty (*Carlos, supra,* 35 Cal.3d at pp. 148-150). The prosecutor, who did not seek the death penalty, argued that "although the constitutional principles may demand an intent to kill requirement before imposing the death penalty, the [1978 death penalty] initiative could be 'severed,' and the lesser penalty of life imprisonment without possibility of parole imposed upon defendants who did not intend to kill." (*Id.,* at pp. 152-153.)

The court rejected this argument and issued the writ. Applying standard principles of statutory interpretation, the court first construed the accomplice felony-murder special circumstance (§ 190.2, subd. (b)) and the felony murder special circumstance (*id.,* subd. (a)(17)) as requiring an intent to kill, thereby avoiding "substantial constitutional questions." (35 Cal.3d at pp. 132, 152.) The court then dismissed the prosecutor's severance argument "on several counts" (*id.,* at p. 153), stating, inter alia: "Finally, as we recently explained in *People* v. *Spears* ([1983] 33 Cal.3d 279 [188 Cal.Rptr. 454, 655 P.2d 1289]), 'the entire procedural scheme for disposition of a charge of special circumstances [under the 1978 initiative] . . . "is properly restricted to cases involving adults charged with first degree murder and subject to the death penalty."' [Citations.] If a defendant is not subject to the death penalty, then under the reasoning of *Davis*[5] and *Spears* he is not subject to special circumstance proceedings and cannot be sentenced to life imprisonment without possibility of parole. [Fn.]" (35 Cal.3d at 153.)

■■ Defendant asserts that the present case is indistinguishable from *Carlos,* in that both cases presented pretrial challenges to a provision of the death penalty scheme on the ground that the provision violated the ban on cruel and unusual punishment, and the statutory language at issue in

---

[4]No issue is presented concerning the requirement that the defendant knew or reasonably should have known that the peace-officer victim was "engaged in the performance of his duties," and no further discussion to this qualifying phrase will be given.

[5]*People* v. *Davis* (1981) 29 Cal.3d 814 [176 Cal.Rptr. 521, 633 P.2d 186].

both "is effectively the same." A pretrial determination of the constitutionality of the challenged provision, he submits, is thus required.

We disagree. Although this case and *Carlos* both presented pretrial constitutional challenges to a special circumstance, there the similarity ends. The felony-murder special circumstance at issue in *Carlos* makes no mention of an intent to kill. (§ 190.2, subds. (a)(17), (b).) Once the court determined that a showing of an intent to kill is an element of the special circumstance, it followed that *Carlos* could not be tried on the special circumstance regardless of the penalty sought. *Carlos'* successful pretrial challenge to the special circumstance thus relieved him of the burden of defending a capital charge, and spared the judicial system the additional expense and time attendant on trial of a capital case (see, e.g., *Sand* v. *Superior Court* (1983) 34 Cal.3d 567, 573 [194 Cal.Rptr. 480, 668 P.2d 787]; *Ghent* v. *Superior Court* (1979) 90 Cal.App.3d 944, 953-954, fn. 10 [153 Cal.Rptr. 720]). (See also *People* v. *Superior Court (Engert)* (1982) 31 Cal.3d 797 [183 Cal.Rptr. 800, 647 P.2d 76].)

Here the special circumstance specifies that the killing of the peace officer must have been intentional, and requires further that the defendant "knew or reasonably should have known" that his victim was a peace officer. (§ 190.2, subd. (a)(7) [hereafter "subdivision (a)(7)"].) The sufficiency of the evidence to sustain the allegation against defendant is not in dispute. The only question presented by defendant's demurrer is the facial validity of that part of the statute that subjects to the death penalty a defendant who reasonably should have known that the victim he intentionally killed was a peace officer. Notwithstanding defendant's successful challenge to this provision, he still must stand trial on the capital offense of murder in the first degree with the special circumstance of intentionally killing a peace officer. Notwithstanding the court's order, the prosecution may still seek the death penalty, thus requiring individual voir dire of the jury (*Hovey* v. *Superior Court* (1980) 28 Cal.3d 1 [168 Cal.Rptr. 128, 616 P.2d 1301]); evidence relating to the factual basis of the special circumstance will still have to be tried to the jury; and if the jury finds defendant guilty of first degree murder, depending on its finding on the special circumstance, a penalty phase may still be required.

In short, defendant remains a defendant "'"'charged with first degree murder and subject to the death penalty.'"'" (*Carlos* v. *Superior Court, supra,* 35 Cal.3d at 153.) The only effect of the court's order is to relieve him of having to defend the allegation that he "reasonably should have known" that his victim was a peace officer. The practical benefit of this consequence is problematic. Knowledge, like intent, is rarely susceptible of direct proof and generally must be established by circumstantial evidence

and the reasonable inferences to which it gives rise. (See, e.g., *People* v. *Beeman* (1984) 35 Cal.3d 547, 558-560 [199 Cal.Rptr. 60, 674 P.2d 1318] [proof of aider and abettor's intent]; *People* v. *Matson* (1974) 13 Cal.3d 35, 41 [117 Cal.Rptr. 664, 528 P.2d 752] [proof of burglar's intent]; cf. *People* v. *Alcala* (1984) 36 Cal.3d 604, 625-627 [205 Cal.Rptr. 775, 685 P.2d 1126] [circumstantial evidence of premeditated murder]; see generally Witkin, Cal. Evidence (2d ed. 1966) Circumstantial Evidence, § 368, p. 327.) Thus, regardless of the trial court's order striking the challenged phrase, the issue of what defendant reasonably should have known will implicitly remain in the case, as the jury seeks to determine from the evidence what defendant in fact did know. Inapplicable here, therefore, are the policy considerations and logic that defendant argues favor a pretrial ruling. To the contrary, the pretrial ruling in this case spares neither the defendant nor the state the burden of trial of a capital offense.

The general rule is that a court will not reach constitutional questions unless absolutely required to do so to dispose of the matter before it. (*People* v. *Williams* (1976) 16 Cal.3d 663, 667 [128 Cal.Rptr. 888, 547 P.2d 1000]; see also *In re Cregler* (1961) 56 Cal.2d 308, 313 [14 Cal.Rptr. 289, 363 P.2d 305].) Because neither *Carlos* nor considerations of public policy require a pretrial determination of the facial validity of the "reasonable-man" provision of subdivision (a)(7), that rule governs.

The additional rule that judicial review of the constitutionality of a statute challenged as imposing cruel and unusual punishment will await the actual imposition of the punishment lends support to this conclusion. In *People* v. *Dillon, supra,* our Supreme Court applied this rule in the context of a proportionality challenge to a sentence of death or life imprisonment with or without parole for a first degree felony-murder. (34 Cal.3d at pp. 477, 479.) Application of the rule in the instant case is equally appropriate. After trial and imposition of a sentence of death, if such occurs, the reviewing court will have before it the instructions given the jury as well as the facts concerning the offense, both of potential relevance to a determination of the constitutionality of the provision herein challenged. (Cf. *Enmund* v. *Florida, supra,* 458 U.S. at pp. 798-801 [73 L.Ed.2d at pp. 1152-1154].) Indeed, defendant concedes, as the district attorney argued below, that if the statute is interpreted to require actual knowledge and intent to kill an officer, its constitutionality would not be in doubt. The jury instructions may therefore moot the issue presented by defendant's demurrer.[6]

We conclude, therefore, that the trial court erred in sustaining the demurrer.

---

[6]In so saying, we do not intend to express any opinion concerning whether the statute is susceptible of such an interpretation or whether such an interpretation is necessary to sustain it.

Because the constitutional issue of cruel and unusual punishment may arise after trial if defendant is convicted of murder in the first degree with the subdivision (a)(7) special circumstance and is thereafter sentenced to death, some comments concerning trial procedure are in order.

To facilitate review in the event the trial proceeds to a determination of the alleged special circumstance, the trial court is directed to have the jury, if it finds that defendant intentionally killed a peace officer, indicate in special verdict forms (see § 190.4) which of the following applies: (1) that the defendant knew his victim was a peace officer acting in the discharge of his duties; (2) that the defendant did not know his victim was a peace officer, acting in the discharge of his duties but he reasonably should have known; or (3) that the defendant did not know his victim was a peace officer acting in the discharge of his duties and his failure to know was reasonable.

The judgment is reversed.

Channell, J., concurred.

**POCHÉ, Acting P. J.**—I dissent.

No decoding is necessary to understand the message from the Supreme Court contained in *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131, 134, 153-154 [197 Cal.Rptr. 79, 672 P.2d 862]: if the penalty of death is inapplicable (for constitutional or other reasons) to a particular special circumstance then the defendant can neither be charged nor tried on the special circumstance allegation even if the penalty of life imprisonment without possibility of parole would withstand constitutional scrutiny. Thus what the majority finds dispositive—that the defendant will be standing trial on another special circumstance—is not only not dispositive it is not relevant to any determination made below or here. That this defendant might be subject to 100 other special circumstance allegations would not change the rule: he cannot be tried on the special circumstance allegation that he reasonably should have known that his victim was then a police officer engaged in the performance of duty unless the defendant would be subject to the penalty of death were the jury to find the allegation to be true.

We—like the trial court—have the obligation to answer the question presented by demurrer and properly presented by this appeal by the People. The trial court met its duty. It decided the question of law before it. We should, too.

Instead the majority seems upset that since there has been no trial yet we cannot review "instructions given" or "the facts of the offense." Those

matters are irrelevant to the determination of whether the death penalty may be assessed against one who commits first degree murder of a person he, through negligence, did not recognize was a peace officer engaged in the performance of his duty. Neither instructions nor additional facts will help us make that determination. Such is the nature of demurrers.

Thus what happens here is that the judgment of the trial court rendered more than 18 months ago is reversed and the parties are relegated to trial. Neither side has the benefit of what both were entitled to: a determination of whether a large part of the complicated proceedings that now are to unfold are constitutional.

Since only the Supreme Court has appellate jurisdiction if the penalty of death is ordered this court has almost entirely immunized itself from the tough questions and has reversed a trial court for answering those questions. Presumably the trial court would not have been reversed for "prematurity" had it decided to overrule the demurrer and to let the boys fight it out at trial.

In my estimation the majority's action is contrary to the law (*Carlos, supra*) and is lamentable policy which unnecessarily avoids our duty to decide tough questions properly presented. This inaction will increase the complexity of a death penalty case and will substantially diminish the chances of disposing of the eventual judgment without the necessity of reversal and retrial.

I would therefore reach the merits.

Respondent's petition for review by the Supreme Court was denied October 2, 1986. Bird, C. J., and Reynoso, J., were of the opinion that the petition should be granted.