[No. B036683. Second Dist., Div. One. Mar. 1, 1990.]

THE PEOPLE, Plaintiff and Appellant, v.
MAX BERNARD FRANC, Defendant and Respondent.

## COUNSEL

Ira Reiner, District Attorney, Harry B. Sondheim and Brent Riggs, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, under appointment by the Court of Appeal, Laurence M. Sarnoff, Charles Gessler and Henry J. Hall, Deputy Public Defenders, for Defendant and Respondent.

## OPINION

## HANSON, J.—

### INTRODUCTION

The People, appealing the trial court's ruling striking a Penal Code section 190.2, subdivision (a)(14) allegation that a murder was especially heinous, atrocious, and cruel, request this court to review and overrule existing California Supreme Court precedent holding such an allegation unconstitutional and to reverse the trial court's ruling. Because of the stare decisis doctrine, however, and because evidence at the preliminary hearing supports the trial court's determination, we affirm its ruling striking the special circumstances allegation from the information.

In an information filed December 2, 1987, the Los Angeles County District Attorney charged defendant Max Bernard Franc in count I with murder in violation of Penal Code section 187, subdivision (a), and in count II with robbery in violation of Penal Code section 211.[1]

The information alleged three special circumstances in connection with count I: that defendant committed the murder while engaged in committing

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

robbery in violation of section 211 within the meaning of section 190.2, subdivision (a)(17); that the murder was especially heinous, atrocious, and cruel, manifesting exceptional depravity, within the meaning of section 190.2, subdivision (a)(14); and that if he was not the actual killer or the only killer, defendant intentionally aided, abetted, counseled, commanded, induced, solicited, requested, or assisted in committing the first degree murder falling under section 190.2, subdivision (a)(17) (robbery murder) or under section 190.2, subdivision (a)(14).

A felony preliminary hearing was held on November 20, 23, and 24, 1987. On November 25, 1987, pursuant to section 995, the defendant moved to strike the special circumstances allegations. The People urged that the trial court deny the motion as to the section 190.2, subdivision (a)(14) special circumstance because of allegations that the defendant had dismembered the body with a chain saw and amputated limbs of the murder victim. This conduct, the People argued, warranted inclusion of the subdivision (a)(14) special circumstance allegation in the information. On January 21, 1988, based on *People* v. *Superior Court* (*Engert*) (1982) 31 Cal.3d 797 [183 Cal.Rptr. 800, 647 P.2d 76], the trial court granted defendant's motion as to the heinous, atrocious, and cruel allegation pursuant to section 190.2, subdivision (a)(14), ordered that allegation stricken from the information, and denied all other aspects of the section 995 motion.

On March 18, 1988, the Los Angeles County District Attorney filed a notice of appeal from defendant's section 995 motion. The parties refer to a petition for writ of mandate filed by the People in the California Supreme Court on the same date as this appeal, and to the subsequent trial of the defendant on the charges in the information absent the stricken special circumstances allegations. These developments, however, are not part of the record in this appeal. We can determine only the issues presented by the appeal as it stands before us, i.e., from preliminary hearing transcripts.

## APPEALABILITY OF ORDER

Defendant concedes that section 1238, subdivision (a)(1) authorizes the district attorney's appeal from an order granting a section 995 motion and striking part of an information. Defendant claims that *Anderson* v. *Superior Court* (1967) 66 Cal.2d 863, 867 [59 Cal.Rptr. 426, 428 P.2d 290], bars this appeal by declaring that the state cannot exercise its statutory right to appeal so that it harasses or otherwise deprives a defendant of his right to due process of law.

In *Anderson,* the People appealed the grant of a defendant's section 995 motion to set aside an indictment. While the appeal was pending, the de-

fendant was held to answer after a preliminary hearing and an information was filed charging him with murder. Defendant pleaded not guilty and the matter was set for trial, but the trial court raised the question of its jurisdiction to proceed and the defendant filed a writ of prohibition. *Anderson* held that the People could not pursue an appeal from an order dismissing an accusatory pleading under section 995 and while the appeal was pending file a new pleading charging the same offense and proceed to trial. Instead, "the People should elect as soon as feasible between maintaining the appeal or proceeding under the new accusatory pleading. At the latest, this election should occur either when the new accusatory pleading withstands a motion under section 995 or at the time of arraignment for plea, whichever first occurs." (66 Cal.2d at p. 867.)

■ Unlike *Anderson,* however, in the case at bench the trial appears to have proceeded to its conclusion on those parts of the information not affected by the trial court's ruling. *Anderson* does not bar the People from appealing a dismissal of some parts of an indictment while proceeding to trial on what remains. The trial court retains jurisdiction to try those counts not affected by the appeal. (*People* v. *Bogart* (1970) 7 Cal.App.3d 257, 263-264 [86 Cal.Rptr. 737].)

In other words, *Anderson* prevents the People from pursuing its right to appeal and proceeding to trial on the same charges simultaneously, and requires the People to make an election. The People may nonetheless pursue their remedies as to different parts of the information successively, which avoids the problem of the accused having to defend against a trial and an appeal that concerned the *Anderson* court. (*Anthony* v. *Superior Court* (1980) 109 Cal.App.3d 346, 353 [167 Cal.Rptr. 246].)

■ *Anthony* does not address the later trial of parts of an information dismissed and reversed on appeal. *People* v. *Garcia* (1984) 36 Cal.3d 539, 558 [205 Cal.Rptr. 265, 684 P.2d 826], *People* v. *Alexander* (1985) 163 Cal.App.3d 1189, 1206 [210 Cal.Rptr. 306], and *People* v. *Smith* (1986) 187 Cal.App.3d 666, 685 [231 Cal.Rptr. 897], however, indicate that where there has not been insufficient evidence to support the allegation, trial of a special circumstance allegation may proceed independently of other charges that have already resulted in a conviction. A failure of proof bars retrial of a special circumstance because of double jeopardy, but an error of law does not. (*People* v. *Shirley* (1982) 31 Cal.3d 18, 71 [181 Cal.Rptr. 243, 723 P.2d 1354].)

### FACTS

At the preliminary hearing the trial court heard evidence on the discovery of body parts in Fresno and at the McBean Parkway exit on Interstate 5

north of Los Angeles; on an identification of the defendant as having been parked at the McBean Parkway exit after the murder; on the defendant's rental of a chain saw; on the discovery of human blood in the chain saw when it was returned and in several places in the defendant's Los Angeles apartment; on the discovery, in the defendant's Fresno office, of the revolver to which ballistics evidence linked the bullet that killed the victim; and on several other matters relating to the People's case.

However, only one item of evidence pertains to this appeal. Dr. Jerry Nelson, a pathologist who performed the autopsy on the victim, ascribed the cause of death to a gunshot wound to the head. Nelson also testified about the amputations he observed. "There was no indication that the deceased had life in him at the time of the amputation. There was no evidence of traumatic hemorrhage in the adjacent body parts and the remaining torso." This testimony was the only evidence before the trial court on this issue. It was uncontradicted.

## ISSUES

The People on appeal claim that *People v. Superior Court (Engert), supra*, 31 Cal.3d 797, is unsound, that section 190.2, subdivision (a)(14) is constitutional, and that the trial court's ruling should be reversed.

## DISCUSSION

### I.  STARE DECISIS

The People point out that courts in other states have found no constitutional impediment in statutes similar to or identical with section 190.2, subdivision (a)(14). The People argue that these adjudications make *People v. Superior Court (Engert), supra*, 31 Cal.3d 797, worthy of reexamination.

*Engert* held statutory references to a murder as "especially heinous, atrocious, or cruel, manifesting exceptional depravity" to be unconstitutionally vague. The trial court in the case at bench stated that existing California Supreme Court precedent bound it as a lower court. It likewise binds this intermediate appellate court, which is not entitled to depart from *Engert*. (*Fogerty v. State of California* (1986) 187 Cal.App.3d 224, 234 [231 Cal.Rptr. 810], citing *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

■ Although stare decisis doctrine retains some flexibility, it permits only the California Supreme Court, not a lower court, to depart from Supreme Court precedent in an appropriate case. (*Moradi-Shalal v. Fire-*

*man's Fund Ins. Companies* (1988) 46 Cal.3d 287, 296 [250 Cal.Rptr. 116, 758 P.2d 58]: "[T]he [stare decisis] policy is a flexible one which permits *this* court to reconsider, and ultimately to depart from, *our own* prior precedent in an appropriate case." (Italics added.) As recently as 1988, the Supreme Court has shown no inclination to change *Engert.* (*People* v. *Wade* (1988) 44 Cal.3d 975, 993 [244 Cal.Rptr. 905, 750 P.2d 794].)

## II. TORTURE

The facts provide another, more narrow reason why the trial court's ruling should be affirmed. It derives from the primarily factual nature of the standard for reviewing a section 995 motion. *Engert,* to be sure, designated some statutory language unconstitutionally ambiguous. It also held that because the special circumstance statute defined a crime to be determined by a jury during the guilt phase rather than a sentence to be determined during the penalty phase, due process required the same specificity and clarity in defining the special circumstance that it requires in defining the crime. (*People* v. *Superior Court* (*Engert*), *supra,* 31 Cal.3d 797, 803.) The single part of subdivision (a)(14) that *is* specific, however, sets forth the following definition. "As utilized in this section, the phrase especially heinous, atrocious or cruel manifesting exceptional depravity means a conscienceless, or pitiless crime which is *unnecessarily torturous to the victim.*" (Italics added.)

▬ Torture has an established meaning in California. Torture is the "'[a]ct or process of inflicting severe pain, [specially] as a punishment, in order to extort confession, or in revenge,'" and implies "an intent to cause pain and suffering in addition to death. That is, the killer is not satisfied with killing alone. He wishes to punish, execute vengeance on, or extort something from his victim, and in the course, or as the result of inflicting pain and suffering, the victim dies." There must be a causal relationship between the torturous act and the victim's death. (*People* v. *Davenport* (1985) 41 Cal.3d 247, 266-267 [221 Cal.Rptr. 794, 710 P.2d 861].)

As used in another special circumstance allegation, section 190.2, subdivision (a)(18), torture encompasses the victim's experience of physical or mental discomfort. Most particularly, it encompasses the perpetrator's acts "calculated to cause extreme physical pain to the victim and which were *inflicted prior to death.*" (*People* v. *Davenport, supra,* 41 Cal.3d 247, 271, italics added.)

The People argue that subdivision (a)(14) employs the word "torturous" with a different meaning from that which the California Supreme Court has given the word "torture" used in subdivision (a)(18). The crux of their

argument, as stated in their brief on appeal, seeks to prove that by adopting subdivision (a)(14), the electorate intended that "the death penalty could be imposed in situations involving torture, in some significant sense of the term, not accompanied by the infliction of physical pain." We are not persuaded. A deceased person cannot feel pain. ██ ██ Without a living victim, no torture can occur. (*People* v. *Davenport, supra,* 41 Cal.3d 247, 271.)

In the case at bench, uncontradicted evidence showed that the victim died before dismemberment or amputation occurred. An information must be set aside if there is a total absence of evidence to support a necessary element of one of its allegations. (*People* v. *Caffero* (1989) 207 Cal.App.3d 678, 684 [255 Cal.Rptr. 22].) Therefore the trial court correctly struck this special circumstance allegation from the information.

### DISPOSITION

The ruling of the trial court is affirmed.

Spencer, P. J., and Ortega, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 31, 1990.