COMMONWEALTH vs. ABIMAEL COLON-CRUZ[1]
(and two companion cases[2]).

Worcester. May 7, 1984. — October 18, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Death Penalty. Constitutional Law,* Death penalty, Right to jury trial, Judicial review. *Practice, Criminal,* Report.

On interlocutory report pursuant to Mass. R. Crim. P. 34 of questions concerning the validity under the Federal and State Constitutions of G. L. c. 265, § 2, and G. L. c. 279, §§ 4, and 57-71, as amended by St. 1982, c. 554, §§ 3-8, this court held that the public interest would be served by its considering the questions reported, without waiting until a criminal defendant was sentenced to death. [154-157] HENNESSEY, C.J., concurring; WILKINS, J., dissenting; NOLAN, J., with whom LYNCH, J., joins, dissenting.

Article 116 of the Amendments to the Massachusetts Constitution, providing that no provisions of the Massachusetts Constitution "shall be construed as prohibiting the imposition of the punishment of death," precluded this court from holding that the death penalty in itself was invalid under the State Constitution, but did not bar judicial review of the constitutionality of death penalty legislation on other grounds. [157-162] NOLAN, J., with whom LYNCH, J., joins, dissenting.

General Laws c. 265, § 2, and G. L. c. 279, §§ 4 and 57-71, as amended by St. 1982, c. 554, §§ 3-8, providing for the imposition and execution of the death penalty in certain murder cases, violate art. 12 of the Declaration of Rights of the Massachusetts Constitution by impermissibly burdening a defendant's right against self-incrimination and his right to a jury trial. [163-172] HENNESSEY, C.J., concurring; NOLAN, J., with whom LYNCH, J., joins, dissenting.

INDICTMENTS found and returned in the Superior Court Department on June 14, 1983.

---

[1] Also known as Emilio Otero.

[2] One is against Miguel Angel Rosado and one is against Jose Anibal Colon, also known as Jose William Hernandez.

Questions of law were reported to the Appeals Court by *John J. Irwin*, J. The Supreme Judicial Court granted a request for direct review.

*Donald D. Deren* for Miguel Angel Rosado.

*Dennis J. Brennan* for Jose Anibal Colon.

*Milton H. Raphaelson* for Abimael Colon-Cruz.

*Daniel F. Toomey,* Assistant District Attorney *(Harry D. Quick, III,* Assistant District Attorney, with him) for the Commonwealth.

The following submitted briefs:

*William D. Delahunt,* District Attorney for the Norfolk District, amicus curiae.

*Patricia A. O'Neill & Richard Zorza,* for Massachusetts Defenders Committee, amicus curiae.

*Newman Flanagan,* District Attorney for the Suffolk District, & others, amici curiae.

*Francis X. Bellotti,* Attorney General, *Barbara A. H. Smith & Paul A. Lazour,* Assistant Attorneys General, for the Attorney General, amicus curiae.

*John A. Perkins, Allan van Gestel, Margaret R. Hinkle & Paul E. Nemser,* for Boston Bar Association, amicus curiae.

*John Reinstein, Max D. Stern, Ann Lambert Greenblatt, Alan J. Rom, Geraldine S. Hines & Judith Farris Bowman,* for Massachusetts Citizens Against the Death Penalty & others, amici curiae.

LIACOS, J. In *District Attorney for the Suffolk Dist.* v. *Watson,* 381 Mass. 648 (1980), this court declared unconstitutional thè capital punishment statute, c. 488 of the Acts of 1979. The court held that the penalty of death was impermissibly cruel under art. 26 of the Declaration of Rights of the Massachusetts Constitution.[3] That article then provided, in its entirety: "No magistrate or court of law, shall demand excessive bail or sureties, impose excessive fines, or inflict cruel or unusual punishments."

---

[3] We ruled that the death penalty was unconstitutionally cruel when judged by contemporary standards of decency and also that it was unconstitutionally cruel because of its arbitrary and discriminatory administration. *District Attorney for the Suffolk Dist.* v. *Watson, supra* at 650, 665.

On November 2, 1982, the voters approved a constitutional amendment which added a second and third sentence to art. 26: "No provision of the Constitution, however, shall be construed as prohibiting the imposition of the punishment of death. The general court may, for the purpose of protecting the general welfare of the citizens, authorize the imposition of the punishment of death by the courts of law having jurisdiction of crimes subject to the punishment of death." Art. 116 of the Amendments to the Massachusetts Constitution. This amendment had been adopted by joint sessions of the General Court in the years 1980 and 1982.

On December 15, 1982, both Houses of the General Court enacted c. 554 of the Acts of 1982, providing for capital punishment in certain cases of murder in the first degree. The act was approved by the Governor on December 22, 1982, and took effect on January 1, 1983, to apply to offenses committed on or after the effective date. St. 1982, c. 554, § 8.

On the evening of February 26, 1983, State Trooper George L. Hanna was found on Route 20 in Auburn, injured by multiple gunshot wounds. He was taken to St. Vincent Hospital in Worcester, where he died later that evening as a result of the wounds. Complaints accusing the three defendants of the murder of Hanna issued shortly thereafter from the Worcester District Court. On April 4, 1983, the Commonwealth filed notice in the Worcester District Court that it would present evidence in accordance with the provisions of c. 554 of the Acts of 1982, and that the defendants "may suffer the punishment of death" pursuant to the procedures provided for by that chapter. In June, 1983, a Worcester County grand jury indicted each of the defendants for Hanna's murder. The Commonwealth has indicated that these indictments will be tried separately. See *Bruton* v. *United States,* 391 U.S. 123 (1968).

On November 15, 1983, after hearings on a series of pretrial motions in the Superior Court, the Commonwealth moved, in each case, to report to the Appeals Court, pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979), two questions of law:

"A. Whether G.L. c. 265, S. 2 and G.L. c. 279, Sections 4, 57-71, as most recently amended by St. 1982,

c. 554, S. 3-8, is in compliance with the Constitution of the United States.

"B. Whether G.L. c. 265, S. 2 and G.L. c. 279, Sections 4, 57-71, as most recently amended by St. 1982, c. 554, S. 3-8, is in compliance with the Constitution of the Commonwealth of Massachusetts."

The Superior Court judge allowed the motion in each case over the defendants' objections. From the evidence which he had received in connection with the pretrial motions and from the notice filed by the Commonwealth, the judge found that each defendant, if convicted, might be sentenced to death. He stated in each report that the question of the constitutionality of the death penalty statute was "so important . . . as to require the decision of the Appeals Court." Mass. R. Crim. P. 34. After the reports were entered in the Appeals Court, the Commonwealth applied to this court for direct appellate review, and we allowed the application.[4] We answer question B, "No," on the ground that the statutory sections referred to in the question violate art. 12 of the Declaration of Rights of the Massachusetts Constitution by impermissibly burdening a defendant's right against self-incrimination and right to trial by jury. In view of our answer to question B, we need not answer question A.[5]

---

[4] The defendants, pursuant to Mass. R. A. P. 16 (j), 365 Mass. 860 (1974), have filed a joint brief before this court. In addition to the briefs of the parties, we have had the benefit of numerous briefs amici curiae: Massachusetts Defenders Committee; Boston Bar Association; Massachusetts Citizens Against the Death Penalty, and other interested organizations; Attorney General; district attorney for the Norfolk District; district attorneys for the districts of Suffolk, Plymouth, Berkshire, Hampden, and the Cape and Islands District. We heard oral argument from the parties on May 7, 1984.

[5] See, however, our comment in note 33, infra, as to one argument based on Federal constitutional grounds. We add that we consider the partial summary of other areas of constitutional concern by the Chief Justice, in his concurring opinion, to be helpful in that his comments and suggestions may alert the Legislature to other issues it may wish to consider, should it decide to take further legislative action. As to the dissent of Justice Nolan, who states in his concluding comment that "it is regrettable that the court, having decided to take the case before trial, has responded to only one of the arguments," post 184, we note two points. At the outset of his dissent, Justice

*The propriety of deciding the constitutionality of the questioned provisions at this time.* In our order allowing the application for direct appellate review, we noted that "[b]riefs may discuss the question whether this court should at this time decide any issue concerning the constitutionality of G. L. c. 265, § 2, and G. L. c. 279, §§ 4, 57-71, as amended by St. 1982, c. 554." It is in this court's discretion to postpone decision of issues reported before trial until appellate review after trial, "where such action seems more appropriate as a matter of judicial administration." *Commonwealth* v. *Benjamin,* 358 Mass. 672, 673 n.1 (1971) (court, however, answered the questions reported). We recently discharged a report raising several constitutional questions because of our view that there was a preliminary question, not briefed, which should be decided before any constitutional issue was reached. *Commonwealth* v. *Paasche,* 391 Mass. 18, 21-22 (1984). There we stated that we do not decide constitutional questions unless they necessarily must be reached. *Id.* at 21.[6]

The parties have briefed and argued the question whether we should discharge the reports without decision. Both the Commonwealth and the defendants urge us to decide the reported questions now, in so far as they concern the facial validity of the provisions at issue.[7] Although the defendants

Nolan chides the court for addressing the issue "prematurely." This comment seems implicitly inconsistent with his remark that the court should have considered the other issues in the case. Justice Nolan's position also overlooks two fundamental principles of appellate review. First, a court should only consider the issue dispositive of the matter before it. *Attorney Gen.* v. *Dover,* 327 Mass. 601, 608 (1951). See *Opinion of the Justices,* 372 Mass. 912, 921 (1977). Second, it is hard to see how Justice Nolan can reach the conclusion that the statute is valid without consideration by him of all the arguments as to its unconstitutionality. See *Portland Bank* v. *Apthorp,* 12 Mass. 252 (1815).

[6] In spite of the reluctance to decide constitutional questions, unless necessary, which we expressed in *Commonwealth* v. *Paasche, supra,* and on many other occasions, we have decided constitutional questions reported before trial on numerous occasions in the past. See, e.g., *Commonwealth* v. *Fitta,* 391 Mass. 394 (1984); *Commonwealth* v. *Stowell,* 389 Mass. 171 (1983).

[7] Some of the arguments advanced in the defendants' briefs and in the briefs of certain amici curiae concern the constitutionality of St. 1982,

opposed the motions for report below because of the delay which would be occasioned in the commencement of their trials, their position now is that, since their trials already have been delayed by the reports, we should not render that delay useless by discharging the reported questions without decision.

"Interlocutory matters should be reported only where it appears that they present serious questions likely to be material in the ultimate decision, and that subsequent proceedings in the trial court will be substantially facilitated by so doing." *Commonwealth* v. *Henry's Drywall Co.,* 362 Mass. 552, 557 (1972), quoting *John Gilbert Jr. Co.* v. *C.M. Fauci Co.,* 309 Mass. 271, 273 (1941). Interlocutory reports, however, may be appropriate when the alternative is a prolonged, expensive, involved, or unduly burdensome trial. See *Commonwealth* v. *Cavanaugh,* 366 Mass. 277, 279 (1974).

We believe that the present case meets the criteria of appropriateness for an interlocutory report. The question of the constitutionality of the new death penalty legislation is one of substantial significance; indeed, it is one of public importance. See *Commonwealth* v. *Haddad,* 364 Mass. 795, 797 (1974). It is true that, if we declined to decide either of the reported questions at this stage of the proceedings, we might not have to decide them with respect to these three defendants. See *District Attorney for the Suffolk Dist.* v. *Watson,* 381 Mass. 648, 673 (1980) (Wilkins, J., concurring). However, if we waited to decide the constitutionality of the death penalty legislation until the question had to be answered, the consequence would be prolonged, expensive, involved, and unduly burdensome trials [8] for both the Commonwealth and the defense, not

c. 554, as applied. Both the wording and the timing of the questions reported by the Superior Court judge indicate that he meant those questions to concern only the facial constitutionality of the provisions cited. Since there is no factual record in this case, no issue as to the constitutionality, as applied, of St. 1982, c. 554, could be considered by this court. In any event, having decided that the reported provisions on their face impermissibly burden the defendants' rights under art. 12 to plead not guilty and to have a jury trial, we need reach no other issue, including other facial attacks on the statute raised by the defendants and by some amici curiae.

[8] Litigation of a capital case requires such additional expenditures of money and time as those incident to the summoning of an oversized venire, the con-

only in the case of each of these defendants, but also in every case arising in the meantime where the Commonwealth sought the death penalty, regardless of the eventual outcome of the case.[9] Whether or not the constitutionality of the death penalty legislation would have been a material question in the ultimate decision in the case of any particular defendant, proceedings in the trial court in all cases where the death penalty would have been sought will be substantially facilitated by our entertaining the interlocutory reports.

As the Commonwealth points out, by deciding as we do in the context of a pretrial report rather than after a sentence of death has been imposed, we spare a defendant the hardships which inevitably attend incarceration pending execution of a death sentence. See *District Attorney for the Suffolk Dist.* v. *Watson, supra* at 664-665. See also *id.* at 677, 678-679 n.5, 681, 684-685 (Liacos, J., concurring). We also avoid the necessity of that defendant's having to be resentenced or perhaps even retried.

Finally, it is to be remembered that in *District Attorney for the Suffolk Dist.* v. *Watson, supra,* we decided the constitutionality of this capital punishment statute's predecessor in a proceeding begun by the district attorney by means of a complaint for a declaratory judgment. Four men who were awaiting trial on first degree murder indictments which might subject them to the death penalty had been permitted to intervene as defendants in that case. *Id.* at 649-650. Although we acknowledged

ducting of an exhaustive voir dire of potential jurors, the sequestration of jurors, and the provision of extra security precautions. Under the statutory provisions reported, it also requires the presentation of evidence in a presentence hearing before a jury in cases where the death penalty may be imposed. See G. L. c. 279, § 68, inserted by St. 1982, c. 554, § 6. If we postponed decision of the reported questions, litigation of such cases also would be burdensome in terms of the difficulty that counsel for both sides would experience in making strategic and tactical decisions without knowing whether the death penalty provisions were valid.

[9] We already have been informed of the pendency in Essex County of two cases of murder in the first degree in which the Commonwealth has given notification of its intention to seek the death penalty. At oral argument, the first assistant district attorney for the Middle District indicated that his office might seek the death penalty in two other Worcester County cases.

that declaratory relief will not be granted during the pendency of a criminal prosecution, absent very special circumstances, we concluded that the cases at bar were exceptional ones justifying declaratory relief "to prevent disruption of the orderly administration of criminal justice." *Id.* at 659-660. If the issue of the facial validity of a death penalty statute properly could be decided in the context of a civil action for a declaratory judgment, we see no reason why it should not be decided in the context of a criminal prosecution by means of the procedure provided for by Mass. R. Crim. P. 34.

*The propriety of deciding the constitutionality of the questioned provisions under the Massachusetts Constitution.* The Commonwealth maintains that art. 116 of the Amendments to the Massachusetts Constitution provides immunity for any capital punishment statute from invalidation under any article of the Massachusetts Constitution. According to the Commonwealth, then, art. 116 prevents this court from scrutinizing St. 1982, c. 554, under any provision of the Massachusetts Constitution. We disagree.

Initially, we consider the aims of art. 116 in light of the text and structure of the provision. See *Buckley* v. *Secretary of the Commonwealth,* 371 Mass. 195, 199 (1976). As added by art. 116, the second sentence of art. 26 of the Declaration of Rights provides that no provision of the Massachusetts Constitution "shall be construed as prohibiting the imposition of the punishment of death."

"An amendment to the Constitution is a solemn and important declaration of fundamental principles of government. It is characterized by terse statements of clear significance. Its words were employed in a plain meaning to express general ideas. It was written to be understood by the voters to whom it was submitted for approval. It is to be interpreted in the sense most obvious to the common intelligence. Its phrases are to be read and construed according to the familiar and approved usage of the language." *Yont* v. *Secretary of the Commonwealth,* 275 Mass. 365, 366-367 (1931).

Webster's New Int'l Dictionary 1978 (2d ed. 1959) defines "prohibit" as follows: "1. To forbid by authority or command; to

interdict; as, the law *prohibits* the sale of opiates or men from selling opiates . . . . 2. To stop or prevent (a person); to render impossible (an action); to hinder; debar." The definition of "prohibit" given by Black's Law Dictionary 1091 (5th ed. 1979) is "[t]o forbid by law; to prevent; — not synonymous with 'regulate.'" We conclude that art. 26 now prevents this court from construing any provision of the Massachusetts Constitution, including art. 26 itself, as forbidding the imposition of the punishment of death. We do not, however, see anything in the new language of art. 26 which prevents us from invalidating a particular death penalty statute under the Massachusetts Constitution on a ground other than the imposition of the punishment of death is forbidden.[10]

---

[10] The second sentence of art. 26 "is not to be viewed as an isolated sentence, but the amendment of which it is a part should be read as a whole." *Lincoln* v. *Secretary of the Commonwealth,* 326 Mass. 313, 317 (1950). See also *Buckley* v. *Secretary of the Commonwealth, supra.* Our interpretation of this sentence is borne out by the third sentence of art. 26, also added by art. 116. The third sentence provides: "The general court may, for the purpose of protecting the general welfare of the citizens, authorize the imposition of the punishment of death by the courts of law having jurisdiction of crimes subject to the punishment of death." The second sentence, then, states the provision which is necessary to allow such a law or laws: that no part of the Constitution should be interpreted as prohibiting per se the death penalty.

The position we take is consistent with that taken by the United States Supreme Court. Although we base our decision in this case on the State Constitution and on State law, it is relevant to note that, although the United States Supreme Court has held that the imposition of the death penalty is not invariably cruel and unusual punishment, *Gregg* v. *Georgia,* 428 U.S. 153, 168-187 (1976), other cases of that Court have struck down as unconstitutional, on grounds including the ban against cruel and unusual punishment, a number of death penalty statutes. See, e.g., *Roberts* v. *Louisiana,* 428 U.S. 325, 331, 336 (1976); *Woodson* v. *North Carolina,* 428 U.S. 280, 285, 305 (1976). See also *Beck* v. *Alabama,* 447 U.S. 625 (1980); *Lockett* v. *Ohio,* 438 U.S. 586 (1978); *Coker* v. *Georgia,* 433 U.S. 584, 591-592 (1977).

In short, while the amendment to art. 26 declares that our State Constitution is not to be construed as preventing the enactment of a death penalty statute or as interdicting the death penalty in every circumstance, we do not view it to preclude other constitutional review of the means and ways of determining the imposition of the death penalty.

In Black's Law Dictionary, quoted in the text, it is stated that the word "prohibit" is "not synonymous with 'regulate.'" The same dictionary defines "regulate" as follows: "To fix, establish, or control; to adjust by rule, method, or established mode; to direct by rule or restriction; *to subject to governing prin-*

We do not consider that our invalidation of this statute is equivalent to prohibiting the imposition of the punishment of death. When, in *Commonwealth* v. *Gagnon,* 387 Mass. 567 (1982), we held that G. L. c. 94C, § 32 (*a*), was unconstitutionally vague and therefore was void, the Commonwealth lost the authority to execute the ten-year prison sentences which had been imposed on the defendants under that section. That result did not mean that we were construing either the United States Constitution or our own as prohibiting the imposition of ten-year sentences of imprisonment. Ten-year prison sentences are in themselves constitutional; the particular statutes which provide for them may be unconstitutional for a variety of reasons.[11]

---

*ciples or laws* " (emphasis supplied). *Id.* at 1156. Bouvier's Law Dictionary 991 (Century ed. 1926) states that a "prohibition" of an act means that it is "[f]orbidden to do," but that to "regulate" means "[t]o adjust by rule, method, or established mode; . . . to subject to governing principles or laws." *Id.* at 1040.

Thus, while art. 116 serves to preclude a ruling (as was reached in *District Attorney for the Suffolk Dist.* v. *Watson,* 381 Mass. 648 [1980]) that a particular constitutional provision bars or interdicts the imposition of the death penalty, it cannot be viewed as precluding a review as to whether a particular statute meets constitutional muster under other provisions of the Constitution. The fact that the third sentence carries the limitations on the power of the Legislature to enact such laws only "for the purpose of protecting the general welfare of the citizens" and to authorize the imposition of the death penalty only by those courts "having jurisdiction of crimes subject to the punishment of death" corroborates our analysis. Surely, no one could seriously argue that a defendant subject to the death penalty is to be given no constitutional safeguards, while a defendant charged with a misdemeanor retains them, or that a Housing Court judge could be given the right to impose the death penalty on a recalcitrant landlord in contempt of the judge's orders.

[11] One of those reasons might be that, in particular circumstances, a ten-year prison term is a cruel or unusual punishment. Likewise, we consider that the art. 26 ban against cruel or unusual punishment still may apply to a statute authorizing the death penalty. Instead of operating to prohibit the imposition of the death penalty, however, art. 26 now operates to regulate it. For instance, hypothetical statutes such as those described in note 14, *infra,* still may be ruled unconstitutional under art. 26. Furthermore, a statute may be ruled unconstitutional under art. 26 although it might not be construed as unconstitutional under the Eighth Amendment to the United States

Our interpretation of the language of art. 116 is supported by its history, though that history is not controlling. See *Buckley* v. *Secretary of the Commonwealth, supra* at 200; *Yont* v. *Secretary of the Commonwealth, supra* at 369. As mentioned above, in 1980 a majority of this court ruled that the death penalty was impermissibly cruel under the then-existing version of art. 26. *District Attorney for the Suffolk Dist.* v. *Watson, supra.* In 1977 a majority of the Justices had given their opinion that the enactment of a death penalty bill pending before the Legislature — consisting of essentially the same substantive provisions as those later struck down in *Watson* — would violate art. 26. *Opinions of the Justices,* 372 Mass. 912 (1977). The Justices had stated that "art. 26 . . . forbids the imposition of a death penalty in this Commonwealth in the absence of a showing on the part of the Commonwealth that the availability of that penalty contributes more to the achievement of a legitimate State purpose — for example, the purpose of deterring criminal conduct — than the availability in like cases of the penalty of life imprisonment." *Id.* at 917. In view of this opinion, the Justices had found it unnecessary to state an opinion on the question whether the enactment of the bill would violate arts. 1, 10, and 12. *Id.* at 921.

The first joint session of the General Court to adopt art. 116 did so on September 19, 1980, while *Watson* was pending before this court. The amendment was adopted in joint session by the next General Court on June 21, 1982. The sparse history of this amendment in the General Court sheds little light on the purpose for which it was adopted by either joint session. Nothing in that legislative history, however, indicates any notion that the amendment would shield all death penalty legislation from review under the Massachusetts Constitution.[12] Nothing in the legislative history contradicts the natural inference that art. 116 was principally designed to overrule this

---

Constitution. If the proponents of art. 116 had wished to tie the standard of review under art. 26 to that under the Eighth Amendment, they could have done so. See Fla. Const. art. 1, § 12 (as amended Nov. 2, 1982).

[12] The amendment was designated simply as one "providing for capital punishment." 1980 Joint Session Journal 52.

court's interpretation of art. 26 as forbidding the death penalty and to forestall the possibility that any other provision of the Constitution would be interpreted thus. See *Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230, 241-243 (1946).

That inference is sustained by the summary of the proposed amendment which was circulated to the voters and was printed on the ballot in the manner required by the Massachusetts Constitution, art. 48, General Provisions III and IV of the Amendments, as amended by art. 74, § 4, and art. 108. That summary read: "The proposed constitutional amendment would allow the legislature to enact laws authorizing the state courts to impose the death penalty on the conviction of crimes to be specified by law. The proposed amendment would provide that no provision of the state constitution may in the future be construed as prohibiting the imposition of the punishment of death. A YES vote would change the state constitution to allow the State Legislature to authorize the death penalty for crimes. A NO vote would not change the present prohibition against the death penalty." Nothing in the arguments for and against the amendment circulated to the voters concerned the total insulation of death penalty legislation from constitutional review.[13]

The words of an amendment "are to be construed in such way as to carry into effect what seems to be the reasonable purpose of the people in adopting them." *Raymer* v. *Tax Comm'r,* 239 Mass. 410, 412 (1921). The construction of art. 116 which the Commonwealth urges us to adopt would mean that a statute establishing the death penalty for members of one particular race only or providing for the imposition of the death penalty without trial would be valid under the Massachusetts Constitution. In the absence of any indication to the contrary in the language and history of the amendment, we cannot accept the Commonwealth's radical construction of art.

---

[13] These arguments were circulated to the voters in accordance with art. 48, General Provisions, IV. So also was the minority report of the Joint Committee on Criminal Justice, which began, "Today the Joint Committee on Criminal Justice recommends that, after 35 years, we reinstate the death penalty and that in order to do so we repeal the prohibition of it embodied in Article 26 of the Declaration of Rights."

116 as carrying into effect the reasonable purpose of the people.[14] See *People* v. *Superior Court,* 31 Cal. 3d 797, 806-809 (1982).[15]

---

[14] The Commonwealth's construction of art. 116 also would mean that a statute authorizing the imposition of the death penalty for shoplifting or prescribing the use of torture to carry out a death sentence would be valid under the Massachusetts Constitution. Nothing in the language or history of art. 116 persuades us that the people intended it to have this consequence either. See note 11, *supra.*

[15] In *People* v. *Anderson,* 6 Cal. 3d 628, cert. denied, 406 U.S. 958 (1972), the California Supreme Court held that death was an impermissibly cruel punishment under former art. 1, § 6, of the California Constitution, proscribing cruel or unusual punishment. In November, 1972, art. 1, § 27, of the California Constitution was enacted by initiative. It provides: "All statutes of this state in effect on February 17, 1972, requiring, authorizing, imposing, or relating to the death penalty are in full force and effect, subject to legislative amendment or repeal by statute, initiative, or referendum. The death penalty provided for under those statutes shall not be deemed to be, or to constitute, the infliction of cruel or unusual punishments within the meaning of Article 1, Section 6 nor shall such punishment for such offenses be deemed to contravene any other provision of this constitution."

In *People* v. *Superior Court, supra,* a majority of the California Supreme Court ruled unconstitutionally vague subdivision (a) (14) of Penal Code § 190.2. That subdivision set forth as a "special circumstance[ ]" that "[t]he murder was especially heinous, atrocious, or cruel, manifesting exceptional depravity." The penalty mandated under that section for a defendant found guilty of murder in the first degree in any case where that or any other special circumstance was charged and specially found to be true was death or confinement in State prison for a term of life, without possibility of parole.

The court rested its decision on art. 1, §§ 7 (a) and 15, of the Constitution of the State of California, as well as on the due process clause of the Fourteenth Amendment to the United States Constitution. It rejected the State's argument that art. 1, § 27, of the California Constitution insulated from State constitutional review all statutes, substantive and procedural, relating to the death penalty and thus precluded the court from reviewing the subdivision at issue under the California Constitution. See *People* v. *Superior Court of Santa Clara County, supra* at 807-809. The court stated that "[n]owhere in the section or the legislative history is there any indication that the drafters or proponents intended to affect the continuing applicability of the state Constitution in death penalty trials insofar as the defect in the statute in question does not relate to the death penalty per se." *Id.* at 808. It also based its conclusion as to the intention behind § 27 on the absurd results which would be produced by the logical extension of the State's interpretation of the section. For example, the vagrancy law's "common drunk" provision, which the court had determined to be void for vagueness, precluding imposition of a county jail term, could not have been invalidated

*The unconstitutionality of the questioned provisions.* The death penalty provisions enacted in St. 1982, c. 554, violate art. 12 of the Declaration of Rights of the Massachusetts Constitution. They impermissibly burden both the right against self-incrimination and the right to a jury trial guaranteed by that article.[16] We base this conclusion on the fact that according to the terms of St. 1982, c. 554, the death penalty may be imposed, if at all, only after a trial by jury. Those who plead guilty in cases in which death would be a possible sentence after trial thereby avoid the risk of being put to death. The inevitable consequence is that defendants are discouraged from asserting their right not to plead guilty and their right to demand a trial by jury. For this reason, the answer to reported question B must be that G. L. c. 265, § 2, and G. L. c. 279, §§ 4, 57-

under the State Constitution if the penalty for being a "common drunk" had been death. *Id.* at 809.

At oral argument before us, the Commonwealth sought to distinguish the California case in that the statutory subdivision there ruled unconstitutional had to do with the process of determining guilt or innocence. See *id.* at 803. The Commonwealth conceded at oral argument that art. 116 does not insulate statutory provisions dealing with the process of determining guilt or innocence from State constitutional review. It stated that art. 116 was wholly concerned with disposition.

Although the subdivision invalidated by the California court was concerned with the determination of guilt, the language of the court quoted above indicates that it considered more than just statutory provisions so concerned to be subject to State constitutional review. Furthermore, we see no more justification for interpreting art. 116 as insulating provisions dealing with sentencing from review under the Massachusetts Constitution than for interpreting it as so insulating provisions dealing with the determination of guilt. See notes 11 and 14 *supra*.

[16] Article 12 provides: "No subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him; or be compelled to accuse, or furnish evidence against himself. And every subject shall have a right to produce all proofs, that may be favorable to him; to meet the witnesses against him face to face, and to be fully heard in his defence by himself, or his counsel, at his election. And no subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land.

"And the legislature shall not make any law, that shall subject any person to a capital or infamous punishment, excepting for the government of the army and navy, without trial by jury."

71, as most recently amended by St. 1982, c. 554, §§ 3-8, are not in compliance with the Constitution of the Commonwealth of Massachusetts.

Chapter 554 of the Acts of 1982 provides that the death penalty may be imposed in certain cases of murder in the first degree. The law of the Commonwealth allows a defendant to plead guilty to murder in the first degree. *Commonwealth* v. *Balliro,* 370 Mass. 585, 587 (1976). See G. L. c. 277, § 47;[17] G. L. c. 263, § 6;[18] Mass. R. Crim. P. 12 (a) (1), 378 Mass. 866 (1979).[19] Of a predecessor[20] of G. L. c. 263, § 6, the court said in 1866: "This explicit and unqualified enactment, which includes in its general language the crime of murder as well as all other offences, recognizes the rule which has always been the rule of the common law, that a party may be convicted on his own plea and confession in court, and that in such cases the intervention of a jury to determine his guilt is not necessary." *Green* v. *Commonwealth,* 12 Allen 155, 167 (1866). In *Commonwealth* v. *Balliro, supra,* we ruled that the amend-

---

[17] General Laws c. 277, § 47, as amended by St. 1979, c. 344, § 38, provides in part that "[i]f a prisoner, under indictment for a capital crime, pleads guilty, upon being arraigned, the court shall award sentence against him; if he does not plead guilty, the court may assign him counsel and take all other measures preparatory to a trial."

[18] The first sentence of G. L. c. 263, § 6, as appearing in St. 1979, c. 344, § 19, reads: "A person indicted for a crime shall not be convicted thereof except by confessing his guilt in open court, by admitting the truth of the charge against him by his plea or demurrer or by the verdict of a jury accepted and recorded by the court or, in any criminal case other than a capital case, by the judgment of the court." Although § 6 prohibits a defendant in a capital case from waiving his right to a jury trial, it does not prohibit him from pleading guilty.

[19] Rule 12 (a) (1) of Mass. R. Crim. P. provides, in relevant part, that "[a] defendant may plead . . . guilty . . . to any crime with which he has been charged and over which the court has jurisdiction."

[20] This predecessor, Gen. Sts. c. 158, § 5 (1860), provided that "[n]o person indicted for an offence shall be convicted thereof, unless by confession of his guilt in open court, or by admitting the truth of the charge against him by his plea or demurrer, or by the verdict of a jury accepted and recorded by the court."

ment of G. L. c. 265, § 2, by St. 1951, c. 203,[21] to make a
life sentence possible, in the jury's discretion, when a defendant
was found guilty of murder in the first degree, did not expressly
or impliedly repeal G. L. c. 277, § 47, or G. L. c. 263, § 6.[22]
Likewise, neither the amendment of G. L. c. 265, § 2, by St.
1982, c. 554, § 3, nor any other section of St. 1982, c. 554,
expressly or impliedly repealed those statutes or overruled
Mass. R. Crim. P. 12 (a) (1) or the common law.[23]

If a defendant pleads guilty to murder in the first degree,
he cannot be sentenced to death. As amended by St. 1982,
c. 554, § 3, G. L. c. 265, § 2, provides in part: "Whoever is
guilty of murder committed with deliberately premeditated
malice aforethought or with extreme atrocity or cruelty, and
who had attained the age of eighteen years at the time of the
murder, may suffer the punishment of death pursuant to the
procedures set forth in sections sixty-eight to seventy-one,
inclusive, of chapter two hundred and seventy-nine. Any other
person who is guilty of murder in the first degree shall be
punished by imprisonment in the state prison for life."[24] Gen-

[21] By this chapter, G. L. c. 265, § 2, was amended to read, in part,
"[w]hoever is guilty of murder in the first degree shall suffer the punishment
of death, unless the jury shall by their verdict . . . recommend that the
sentence of death be not imposed."

[22] In their pertinent parts, these statutory sections were the same at the
time of *Balliro* as they are today. See *id.* at 587 nn.3 & 4.

[23] The Commonwealth does not take the view that under St. 1982, c. 554,
a defendant may not plead guilty to murder in the first degree. In conceding
at oral argument that a defendant may plead guilty under that statute, the
Commonwealth stated that it was relying on *United States* v. *Jackson,* 390
U.S. 570 (1968). There the United States Supreme Court stated that "it
should require an unambiguous expression on the part of the Congress to
withhold this authority [to accept a plea of guilty] in specified cases." *Id.*
at 585, quoting *United States* v. *Willis,* 75 F. Supp. 628, 630 (D.D.C. 1948).

[24] The rest of the section provides: "Whoever is guilty of murder in the
second degree shall be punished by imprisonment in state prison for life.
No person shall be eligible for parole under section one hundred and thirty-
three A of chapter one hundred and twenty-seven while he is serving a life
sentence for murder in the first degree, but if his sentence is commuted
therefrom by the governor and council under the provisions of section one
hundred and fifty-two of said chapter one hundred and twenty-seven he
shall thereafter be subject to the provisions of law governing parole for
persons sentenced for lesser offenses."

eral Laws c. 279, § 68, inserted by St. 1982, c. 554, § 6, provides, in part: "In all cases in which a sentence of death may be imposed, the court shall submit to the jury special questions concerning the issue of murder in the first degree. If the jury determines beyond a reasonable doubt that the defendant is guilty of murder in the first degree, the jury shall specify whether the defendant is guilty of murder with deliberate premeditation, murder with extreme atrocity or cruelty, or murder in the commission or attempted commission of a crime punishable by imprisonment for life, or two or more of these. Upon a verdict of guilty of murder in the first degree with deliberate premeditation, or murder in the first degree with extreme atrocity or cruelty, a presentence hearing shall be conducted, unless the commonwealth stipulates that none of the aggravating circumstances as defined in paragraph (*a*) of section sixty-nine exists, before the jury before which the case was tried; provided, however, that if in the opinion of the judge presiding at the presentence hearing, it is impossible or impracticable for the trial jury to sit at the presentence hearing, a new jury shall be impanelled to sit at the presentence hearing."

Section 68 goes on to describe the presentence hearing and the process by which the jury is either to find, or not to find, that the death penalty shall be imposed, including certain findings to be made by the jury with respect to aggravating or mitigating circumstances. General Laws c. 279, § 70, inserted by St. 1982, c. 554, § 6, in turn provides: "Where, upon a trial by jury, a person is convicted of a crime which is punishable by death, a sentence of death shall not be imposed unless findings in accordance with section sixty-eight are made. Where such findings are made and the jury finds that the death penalty shall be imposed, the court shall sentence the defendant to death. Where such findings are not made or not unanimously made or where a sentence of death is not a unanimous finding by the jury, the court shall sentence the defendant to life imprisonment as provided in section two of chapter two hundred and sixty-five."

Section 70 makes it clear that where the sentencing jury does not find unanimously for death, or does not make unani-

mously the other findings required by § 68, the death penalty may not be imposed. In turn, § 68 makes clear the condition precedent to the presentence hearing on the basis of which the sentencing jury is to make these findings. That condition precedent is a verdict by the trial jury of guilty of murder in the first degree with deliberate premeditation or with extreme atrocity or cruelty. If there is no trial jury, there can be no such verdict and therefore no presentence hearing and no sentence of death.[25]

The Commonwealth argues that it was the intent of the Legislature that where a judge has approved a guilty plea to a charge of capital murder in the first degree,[26] and thus there has been no trial or trial jury, a jury is to be empanelled to sit at a presentence hearing and to make a determination as to whether the death penalty shall be imposed. The Commonwealth relies in this argument on the provision in § 68 for the empanelment of "a new jury" to sit at the presentence hearing where, in the opinion of the judge, "it is impossible or impracticable for the trial jury to sit at the presentence hearing." We find this argument strained. A statute is to be interpreted according to the plain and ordinary meaning of its words and their ordinary and approved usage. *Rambert* v. *Commonwealth,* 389 Mass. 771, 773 (1983). *Commonwealth* v. *Galvin,* 388 Mass. 326, 328 (1983). It is most doubtful that the Legislature would have referred to *"the* trial jury" or "a *new* jury" (emphasis supplied) in a provision which was meant to apply where there had been no trial jury. Also, if there had been no trial jury, the opinion of a judge would not be required as to the impos-

---

[25] Furthermore, the use of the words "upon a trial by jury" at the beginning of § 70 may be taken as limiting the death penalty to cases where there has been a trial by jury.

[26] Amici point out that the indictments at bar do not allege that the murder of Hanna was committed with either "deliberate premeditation" or "extreme atrocity or cruelty." If any of the defendants in this case were to plead guilty, therefore, he would not have pleaded guilty to either of the categories of murder of which he must be found guilty before a sentence of death may be imposed. G. L. c. 265, § 2. G. L. c. 279, § 68. We agree with the Commonwealth and other amici that this point is relevant only to the constitutionality of the statute as applied.

sibility or impracticability of the trial jury's sitting at the pre-sentence hearing.

The Commonwealth overlooks two other aspects of § 68 which preclude the interpretation which it urges on us. First, whether the trial jury or a new jury sits at the presentence hearing, the condition precedent to the presentence hearing is "a *verdict* of guilty of murder in the first degree with deliberate premeditation, or . . . with extreme atrocity or cruelty" (emphasis supplied). *Id.* For there to have been such a verdict, there must have been a trial by jury.[27] Finally, the Commonwealth overlooks the first sentence of § 68, which provides that "[i]n all cases in which a sentence of death may be imposed, the court shall submit to the jury special questions concerning the issue of murder in the first degree." That sentence contemplates that in all cases where a sentence of death is possible, there will be a trial jury. In other words, where there is no trial jury, there can be no sentence of death.[28]

"Every rational presumption in favor of [a statute's] validity must be indulged, and it will not be denounced as contrary to the Constitution unless its language is so clear and explicit as to render impossible any other reasonable construction." *Commonwealth* v. *O'Neil,* 233 Mass. 535, 540-541 (1919). The language in St. 1982, c. 554, is so clear and explicit that we are unable to accept the Commonwealth's interpretation of it as providing for the empanelment of a jury to determine whether the death penalty should be imposed on those who plead guilty.[29]

---

[27] A "verdict" is "[t]he formal decision or finding made by a jury, impaneled and sworn for the trial of a cause, and reported to the court." Black's Law Dictionary 1398 (5th ed. 1979). "A verdict in law signifies the final action taken by a jury and nothing else." *Ashapa* v. *Reed,* 280 Mass. 514, 515 (1932).

[28] This interpretation accords with G. L. c. 279, § 70. See note 25, *supra.* Thus, even if a defendant pleaded guilty to an indictment which alleged "deliberate premeditation" or "extreme atrocity or cruelty," see note 26, *supra,* under the terms of §§ 68 and 70 he could not be sentenced to death. The statutory form of indictment for murder in the first degree does not, of course, require such specification. See G. L. c. 277, § 79.

[29] Nor, as the Commonwealth concedes, may we write such a provision into the statute. "Plain omissions in the law to provide for exigencies which

We are precluded from accepting it not only by the language of c. 554 itself, but also by G. L. c. 277, § 47, which provides that one who pleads guilty to a capital crime shall be sentenced by the court.[30]

In *Letters* v. *Commonwealth,* 346 Mass. 403 (1963), the trial judge had threatened to impose harsher sentences if the defendants were found guilty at trial than if they pleaded guilty. This court expunged the defendants' guilty pleas and reversed the judgments against them, stating that a defendant may not be punished for exercising his right to trial. *Id.* at 405. We said: "No matter how heinous the offense charged, how overwhelming the proof of guilt may appear, or how hopeless the defense, a defendant's right to continue with his trial may not be violated. His constitutional right to require the Government to proceed to a conclusion of the trial [and] to establish guilt by independent evidence should not be exercised under the shadow of a penalty . . . . To impose upon a defendant such alternatives [a plea of guilty or the prospect of an unduly harsh sentence in the event of conviction] amounts to coercion as a matter of law." *Id.* at 406, quoting *United States* v. *Tateo,* 214 F. Supp. 560, 567 (S.D.N.Y. 1963).

Recently, we have held that to allow a trial judge to consider, in sentencing, his belief that a defendant lied in his defense at trial impermissibly burdens a defendant's right not to plead guilty and to testify. See *Commonwealth* v. *Souza,* 390 Mass. 813, 818 (1984); *Commonwealth* v. *Coleman,* 390 Mass.

---

may arise cannot be supplied by those charged with administering the law or by the courts in construing and interpreting the statutes." *Commonwealth* v. *Marrone,* 387 Mass. 702, 704 (1982), quoting *Thacher* v. *Secretary of the Commonwealth,* 250 Mass. 188, 190-191 (1924). See also *Commonwealth* v. *Vickey,* 381 Mass. 762, 767 (1980); *State* v. *Frampton,* 95 Wash. 2d 469, 479 (1981).

[30] The only sentence possible in such a case would be life imprisonment. G. L. c. 279, § 70. G. L. c. 265, § 2.

The Commonwealth at oral argument relied on *Commonwealth* v. *Balliro,* 370 Mass. 585, 587 (1976), to support its theory that the language in c. 554 which refers to a trial jury has no application when a defendant has pleaded guilty. Such reliance is not helpful to the Commonwealth, for we held in *Balliro* that, when a defendant has pleaded guilty to murder in the first degree, the judge is to sentence him pursuant to G. L. c. 277, § 47.

797, 808 (1984). We so held as matter of State law, declining to follow *United States* v. *Grayson,* 438 U.S. 41, 54-55 (1978), in which the United States Supreme Court held that such conduct by a trial judge does not violate the Federal Constitution. See *Souza, supra* at 817-818; *Coleman, supra* at 807-808. See also *id.* at 804 & n.7.

We conclude that, if a judge may not penalize a defendant for asserting his right to trial or his right not to plead guilty by imposing a harsher sentence than he otherwise would have, neither may the Legislature authorize such penalization by such legislation as St. 1982, c. 554. This conclusion is supported by analogy to *United States* v. *Jackson,* 390 U.S. 570 (1968), in which the Supreme Court held unconstitutional the death penalty clause of the Federal Kidnaping Act, 18 U.S.C. § 1201 (a) (1964). Under that clause, in an interstate kidnapping case where the victim had not been liberated unharmed, the trial jury, and only the trial jury, could cause the defendant to be sentenced to death. A defendant who pleaded guilty or waived trial by jury[31] could therefore avoid the risk of being put to death. The Supreme Court held that this scheme needlessly[32] chilled the Fifth Amendment right not to plead guilty and the Sixth Amendment right to a jury trial. Whatever the power of Congress to impose a death penalty for violation of the Federal Kidnaping Act, it could not do so in this manner. *Id.* at 581-583. See also *State* v. *Frampton,* 95 Wash. 2d 469, 478 (1981), where the court stated: "Where, pursuant to statutory procedure, the death penalty is imposed upon conviction following a plea of not guilty and a trial, but is not imposed when there

---

[31] Because, under Massachusetts law, the defendant in a capital case may not opt for trial before a judge, see note 18, *supra,* the death penalty legislation enacted in St. 1982, c. 554, is more burdensome than the clause invalidated in *Jackson.* Under St. 1982, c. 554, the defendant must plead guilty in order to avoid the risk of the death penalty, whereas in *Jackson* the defendant could avoid it by opting for a trial to a judge. Thus, the Massachusetts legislation burdens not only the right to jury trial but also the right to trial.

[32] The Court ruled that the chilling effect was unnecessary because Congress could have achieved the goal of limiting the death penalty to cases in which a jury recommended it without penalizing those defendants who pleaded not guilty and demanded a jury trial. *Jackson, supra* at 582-583.

is a plea of guilty, that statute is unconstitutional." A similar result was reached in *Spillers* v. *State,* 84 Nev. 23 (1968). In *Spillers,* the Nevada Supreme Court, relying on *United States* v. *Jackson,* 262 F. Supp. 716 (D. Conn. 1967), rev'd on other grounds, 390 U.S. 570 (1968), ruled that the penalty scheme of Nev. Rev. Stat. § 200.360(1) was unconstitutional in that it impermissibly burdened the defendant's right to trial by jury, since a death penalty would be imposed only as a result of a jury verdict of guilty of rape. The Nevada court rested its decision on both the State Constitution and the Sixth Amendment to the Federal Constitution.[33]

The General Court may not authorize the imposition of the death penalty in a way which needlessly chills defendants' art. 12 rights.[34] Accordingly, the answer to reported question B is

---

[33] Although we rest our decision solely on State constitutional grounds, see note 5, *supra,* our review of the orders of the United States Supreme Court since *Jackson* persuades us that the result we reach would be mandated by the Federal Constitution also. Dealing with State statutes which are marked by a deficiency similar to that in the Massachusetts death penalty statute, the United States Supreme Court has granted certiorari in the following cases, and then, relying in whole or in part on the *Jackson* principle, reversed the judgments in so far as they imposed the death sentence, and remanded for further proceedings: Orders at 403 U.S. 948 (1971), *State* v. *Forcella,* 52 N.J. 263 (1968), sub nom. *Funicello* v. *New Jersey*; *State* v. *Childs,* 269 N.C. 307 (1967); *State* v. *Atkinson,* 275 N.C. 288 (1969); *State* v. *Hill,* 276 N.C. 1 (1969); *State* v. *Roseboro,* 276 N.C. 185 (1970); *State* v. *Williams,* 276 N.C. 703 (1970); *State* v. *Sanders,* 276 N.C. 598 (1970); *State* v. *Atkinson,* 278 N.C. 168 (1971).

[34] In *Commonwealth* v. *LeRoy,* 376 Mass. 243, 246-247 (1978), we rejected the argument that the choice imposed on a defendant by G. L. c. 90, §§ 24 & 24E, as then in effect, unconstitutionally infringed on the defendant's right to a jury trial.

Under § 24 (1) (*b*), inserted by St. 1964, c. 200, § 1, a defendant convicted of operating a motor vehicle while under the influence of intoxicating liquor had his license automatically revoked. See *LeRoy, supra* at 243-245. Under § 24E (as appearing in St. 1975, c. 505, § 2), on the other hand, in certain circumstances where a defendant's case had been continued by a judge without a finding, the judge might enter a dismissal of the charge upon the defendant's satisfactory compliance with a driver alcohol education program. Since there was no conviction in such a case, a defendant's license was not automatically revoked. See *LeRoy, supra* at 244.

LeRoy argued that the statute infringed his right to a jury trial since he only could receive disposition under § 24E and so avoid loss of his license

that G. L. c. 265, § 2, and G. L. c. 279, §§ 4, 57-71, as most recently amended by St. 1982, c. 554, §§ 3-8, are not in compliance with the Constitution of the Commonwealth of Massachusetts.[35]

---

if he chose to be tried by a judge. *LeRoy, supra* at 246. In rejecting this argument, we stated that "[n]ot all government-imposed choices in the criminal process which discourage the exercise of rights are impermissible." *Id.* That statement is not controlling here. One of the cases we relied on in making it was *Mann* v. *Commonwealth,* 359 Mass. 661, 667 (1971), in which we rejected the argument that the imposition of a greater sentence after a de novo trial under G. L. c. 278, § 18, as amended by St. 1955, c. 131, § 8, unconstitutionally burdened the right to a jury trial. We there distinguished *United States* v. *Jackson, supra,* as having "no application. In the *Jackson* case the death sentence could be imposed only if the defendant insisted on trial by jury. Clearly, Jackson's right to a jury trial was burdened unconstitutionally by such provision." *Mann, supra. LeRoy* is also distinguishable from *Jackson* and from the present case. First, it is distinguishable by virtue of the fact that the harsher penalty was equally available upon conviction by a judge as upon conviction by a jury. See *LeRoy, supra* at 245. Second, it is distinguishable by virtue of the fact that it involved a minor offense and a minor penalty. See *Commonwealth* v. *Marder,* 346 Mass. 408, 409, 411-412 (1963), decided the same day as *Letters* v. *Commonwealth, supra.* See also *Corbitt* v. *New Jersey,* 439 U.S. 212, 217 (1978).

[35] Section 7 of St. 1982, c. 554, provides that "[i]f any of the provisions of this act or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this act which can be given effect without the invalid provisions or applications, and to this end the provisions of this act are declared severable." Our answer to question B is based on our view that c. 554 authorizes the imposition of the death penalty in a way which is unconstitutional. Those provisions which relate to the method of execution of the death penalty cannot be given effect without the provisions which relate to the imposition of the death penalty, and hence are not severable. .

Thus, §§ 57-71 of G. L. c. 279, inserted by St. 1982, c. 554, § 6, are wholly invalid. General Laws c. 279, § 4, as appearing in St. 1982, c. 554, § 4, is, on the other hand, only partially invalid. So far as it provides that "[s]entence shall be imposed upon conviction of a crime, regardless of whether an appeal has been taken," it is valid. Likewise, G. L. c. 265, § 2, as appearing in St. 1982, c. 554, § 3, is valid except for the first sentence, the sentence relating to the death penalty. The provisions of G. L. c. 279, § 4, and c. 265, § 2, which do not relate to the death penalty "can be given effect without the invalid provisions" of those sections. Furthermore, we conclude that the provisions which do not relate to the death penalty "have independent force, thus justifying the inference that the enacting body would have passed [them] without the other[s]." *Commonwealth*

HENNESSEY, C.J. (concurring). I concur in the opinion of the court. Under the recent amendment to art. 26, the death penalty itself is not *forbidden* by any provision of the State Constitution. However, the amendment does not preclude consideration of the constitutionality of the statutory *implementation* of the death penalty. Under c. 554, a defendant who pleads guilty to murder in the first degree cannot be sentenced to death. Consequently, it is clear that any defendant who does not plead guilty, is found guilty after a trial, and is subsequently sentenced to death, has been, under art. 12 of the Declaration of Rights, unconstitutionally penalized for exercising his right to try his case rather than to plead guilty. This conclusion is unavoidable unless one distorts and "rewrites" in an impermissible manner the clear language of the legislation.

I add that I should prefer that the court rest its conclusion of unconstitutionality upon the United States Constitution.[1] If the court had done so, it would be unnecessary at this time to reach the issue of the scope and meaning of art. 116 of the Amendments to the State Constitution. In *United States* v. *Jackson,* 390 U.S. 570, 581 (1968), the Supreme Court stated: "Our problem is to decide whether the Constitution permits the establishment of such a death penalty, applicable only to those defendants who assert the right to contest their guilt before a jury. The inevitable effect of any such provision is, of course, to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial." In a number of cases the Supreme Court has relied on the *Jackson* principle in vacating death sentences. Orders at 403 U.S. 948 (1971) (*State* v. *Forcella,* 52 N.J. 263 [1968], sub nom. *Funicello* v. *New Jersey*; *State* v. *Childs,* 269 N.C. 307 [1967]; *State* v. *Atkinson,*

v. *Marrone,* 387 Mass. 702, 707 (1982), quoting *Del Duca* v. *Town Adm'r of Methuen,* 368 Mass. 1, 13 (1975). See also *Opinions of the Justices,* 372 Mass. 912, 917-918 (1977); *Commonwealth* v. *Harrington,* 367 Mass. 13, 15-22 (1975); *Commonwealth* v. *LeBlanc,* 364 Mass. 1, 14-15 (1973).

[1] I am somewhat reassured, however, by note 33 of the opinion of the court, which indicates that the court would perceive no difficulty in resting its decision upon the Federal Constitution.

275 N.C. 288 [1969]; *State* v. *Hill,* 276 N.C. 1 [1969]; *State* v. *Roseboro,* 276 N.C. 185 [1970]; *State* v. *Williams,* 276 N.C. 703 [1970]; *State* v. *Sanders,* 276 N.C. 598 [1970]; *State* v. *Atkinson,* 278 N.C. 168 [1971]). *Pope* v. *United States,* 392 U.S. 651 (1968) (per curiam). See also *Lockett* v. *Ohio,* 438 U.S. 586, 617-619 (1978) (Blackmun, J., concurring); *State* v. *Frampton,* 95 Wash. 2d 469, 478-479 (1981). Chapter 554 suffers from the same defect found in *Jackson* and is clearly unconstitutional under the Fifth and Sixth Amendments to the Constitution of the United States.

The dissenting Justices in this case say that the court is premature in confronting the constitutional issues at this time. We have before us the briefs and constitutional arguments of the parties and more than a score of amici curiae, including civic and religious organizations, as well as bar associations. Unconstitutionality of this statute is argued on many distinct grounds. Yet all these arguments are advanced in the abstract, because none of the defendants has yet been tried. In the public interest, and in the interests of the parties, which, if any, of the arguments should this court reach and rule upon at this time?

1. *The Many Constitutional Issues Now Argued.*

This question will be in better focus if I first summarize some of the many constitutional arguments which have been advanced by the parties. I turn to that summary now. In doing so I imply no opinion as to the merits of any of these arguments.

*Effect of the constitutional amendment.* Because there are contentions that c. 554 is unconstitutional under various provisions of the State Constitution, as well as the Federal Constitution, the broadest and most sweeping issue argued before us concerns the meaning and effect of art. 116, which amended art. 26 of the Massachusetts Declaration of Rights. This court held in *District Attorney for the Suffolk Dist.* v. *Watson,* 381 Mass. 648 (1980), that the death penalty is per se unconstitutional because it is offensive to contemporary standards of decency and because it is arbitrarily inflicted. Subsequently, art. 116 was adopted, providing as follows: "No provision of the Constitution, however, shall be construed as prohibiting the imposition of the punishment of death. The general court

may, for the purpose of protecting the general welfare of the citizens, authorize the imposition of the punishment of death by the courts of law having jurisdiction of crimes subject to the punishment of death."

Various arguments are advanced as to the effect of art. 116. The most restrictive view is that the amendment is obviously responsive to *Watson,* that it addresses only the provision of art. 26 banning "cruel or unusual" punishment, and that it does not affect constitutional analysis under other provisions of the Declaration of Rights, including art. 1. See *Watson, supra* at 665 n.9 (though issue not reached, "[i]t could . . . be said that . . . arbitrariness [in infliction of death penalty] violates art. 1"). The most sweeping position of all is that which contends that the amendment entirely precludes consideration of the death penalty statute under the State Constitution, and that constitutionality of the death penalty statute must be appraised only under the United States Constitution.

Keeping in mind the preliminary and overriding nature of the question as to the effect of the amendment of art. 26, I turn to a summary of the challenges asserted against the death penalty statute under the State and Federal Constitutions.

*Vagueness.* A variety of challenges are asserted on the basis of some of the less precisely drawn provisions of c. 554. "[D]ue process requires that the penalty provision of a criminal statute must be drawn with sufficient definitiveness to foreclose speculation as to its meaning." *Commonwealth* v. *Bongarzone,* 390 Mass. 326, 335 (1983). Particular specificity is required where the penalty is death. *Woodson* v. *North Carolina,* 428 U.S. 280, 305 (1976) (opinion of Stewart, Powell, and Stevens, JJ.).

It is argued that c. 554 is notably imprecise with respect to its identification of certain capital offenses. It provides that one who "is guilty of murder committed with deliberately pre-meditated malice aforethought or with extreme atrocity or cruelty . . . may suffer the punishment of death." G. L. c. 265, § 2, as appearing in St. 1982, c. 554, § 3. It has been stated that "proof of malice aforethought is the only requisite mental intent for a conviction of murder in the first degree based on

murder committed with extreme atrocity or cruelty." *Common-wealth* v. *Cunneen,* 389 Mass. 216, 227 (1983). It has also been said that the term "malice aforethought" is "very technical and somewhat misleading," *Commonwealth* v. *Starling,* 382 Mass. 423, 428 (1981), quoting from *Commonwealth* v. *Madeiros,* 255 Mass. 304, 309 (1926). Thus it is argued that the statute is not sufficiently precise so as to provide adequate guidance to a jury determining whether the death sentence should be imposed.

It is also asserted that the statute is vague with respect to the identification and proof of certain factors relevant to sentencing. It is pointed out that the statute does not specify the burden of proof to be applied to mitigating circumstances. See G. L. c. 279, § 68, inserted by St. 1982, c. 554, § 6. The issue is raised whether the judge must instruct the jury on every mitigating circumstance supported by some evidence in the record, or only on those supported by a preponderance of the evidence. Moreover, it is shown that the statute does not specify whether the judge or the jury is to identify nonstatutory mitigating factors, and it is asked whether the judge is simply to instruct the jury to consider "any other relevant mitigating . . . circumstances," *id.,* or whether the judge must specify those circumstances.

It is further argued that the statute provides the jury with very little guidance on how to conduct the weighing of aggravating and mitigating circumstances. The process is not to be "a mere tallying . . . for the purpose of numerical comparison." G. L. c. 279, § 68. Instead, the jury are to determine whether, "in view of all the relevant circumstances in an individual case," *id.,* the death sentence shall be imposed. The claim here is that this statutory formula does not adequately "channel the sentencer's discretion by 'clear and objective standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the process for imposing a sentence of death.'" *Godfrey* v. *Georgia,* 446 U.S. 420, 428 (1980) (plurality) (footnotes omitted). See also *Gregg* v. *Georgia,* 428 U.S. 153, 195 n.46 (1976) (opinion of Stewart, Powell, and Stevens, JJ.).

The statute requires this court, in each case, to determine whether the sentence of death is "disproportionate to the penalty imposed in other similar cases of one or more jurisdictions legally authorized to impose said penalty of death," and then to reverse or affirm the sentence according to the results of its determination. G. L. c. 279, § 71, inserted by St. 1982, c. 554, § 6. The statute fails to specify which jurisdictions should be examined, or even which criteria should be used to identify those jurisdictions, and it is asserted that there is great variation in the scope of the capital punishment schemes in effect throughout this country today.[2] Thus it is argued that the choice which the statute requires this court to make in selecting one jurisdiction over another for the purposes of proportionality review could have a fundamental effect on the way in which the death penalty would be imposed in Massachusetts.[3]

*Meaningful appellate review.* General Laws c. 279, § 71, requires this court to review, among other things, whether the death sentence "was imposed under the influence of passion, prejudice or any other arbitrary factor," and whether the evidence supports the jury's weighing of aggravating and mitigating circumstances. G. L. c. 279, § 71. Nevertheless, it is pointed out that there is no assurance that the record would be sufficient to enable this court to make this determination in any meaningful way because, for example, the statute does not even require that the jury make written findings on mitigating circumstances. See G. L. c. 279, § 68. It is argued that, because "it is important that the record on appeal disclose to the reviewing court the considerations which motivated the death sentence in every case in which it is imposed," *Gardner* v. *Florida,* 430 U.S. 349, 361 (1977) (plurality), there is a

---

[2] Compare, e.g., Ill. Ann. Stat. c. 38, § 9-1 (Smith-Hurd Supp. 1984), with Tex. Crim. Proc. Code Ann. § 37.071 (Vernon 1981 & Supp. 1984).

[3] Amici also contend that providing this court with the opportunity to choose among States for the purposes of proportionality review is an unlawful delegation of legislative power to the judiciary. See *Commonwealth* v. *Jackson,* 369 Mass. 904, 922 (1976); *Commonwealth* v. *Diaz,* 326 Mass. 525, 527 (1950).

substantial issue as to whether c. 554 adequately provides for preservation of a sufficient record on appeal.

*Proportionality.* General Laws c. 265, § 2, as appearing in St. 1982, c. 554, § 3, authorizes the death penalty for one who is "guilty of murder committed . . . with extreme atrocity or cruelty." As noted above, under certain circumstances the Commonwealth need only show "proof of malice aforethought" as the requisite mental state for a conviction of murder in the first degree committed with extreme atrocity or cruelty. *Commonwealth* v. *Cunneen, supra* at 227. Moreover, according to *Commonwealth* v. *Starling, supra* at 428, under certain circumstances "[m]alice aforethought simply does not require any actual intent to kill or to do grievous bodily harm, or any foresight of such consequences." In sum, G. L. c. 265, § 2, purports to authorize the penalty of death for one who, in fact, may not have intended or even foreseen the consequences of his action.

According to the Supreme Court in *Enmund* v. *Florida,* 458 U.S. 782 (1982), "American criminal law has long considered a defendant's intention — and therefore his moral guilt — to be critical to 'the degree of [his] criminal culpability' . . . and the Court has found criminal penalties to be unconstitutionally excessive in the absence of intentional wrongdoing." *Id.* at 800, quoting *Mullaney* v. *Wilbur,* 421 U.S. 684, 698 (1975). It is asserted that the State Constitution, art. 26, recognizes a similar principle. See *Commonwealth* v. *Bianco,* 390 Mass. 254, 261 (1983) (sentence upheld under art. 26 "[i]n light of the evidence that the defendants' conduct was wilful and deliberate"). Accordingly, because G. L. c. 265, § 2, does not distinguish between those murders committed intentionally, and those which are not, it is argued that there may be circumstances where this statute raises serious issues under the Eighth Amendment, and art. 26 of the Massachusetts Constitution.

*Adequacy of the indictment.* It is well established that, under art. 12, an indictment must set forth "a full and unambiguous statement of all the elements necessary to constitute the offence intended to be punished." *Commonwealth* v. *Palladino,* 358 Mass. 28, 30 (1970). *Commonwealth* v. *Bracy,* 313 Mass.

121, 124 (1943). The same principle has been applied, in Massachusetts, to aggravating factors which increase the potential punishment. In *Tuttle* v. *Commonwealth,* 2 Gray 505, 506 (1854) (Shaw, C.J.), the court held that "[w]hen the statute imposes a higher penalty upon a second and a third conviction, respectively, it makes the prior conviction of a similar offence a part of the description and character of the offence intended to be punished; and therefore the fact of such prior conviction must be charged, as well as proved." See also *Commonwealth* v. *Murphy,* 389 Mass. 316, 320-321 (1983); *Commonwealth* v. *Harrington,* 130 Mass. 35, 36 (1880).

General Laws c. 279 does not require that the indictment show that the grand jury found probable cause to allege the existence of an aggravating factor. Instead, the statute requires only that the prosecutor inform the defendant of "evidence in aggravation of punishment . . . prior to his trial." G. L. c. 279, § 68. Accordingly, it is argued that c. 279 does not comport with the art. 12 command that "the accused should understand, from the indictment, that he is charged with an offence aggravated by the fact of a prior conviction," or by other statutory aggravating factors. *Commonwealth* v. *Holley,* 3 Gray 458, 459 (1855). See *Tuttle* v. *Commonwealth, supra* at 506.

2. *The Dilemma, and the Court's Solution.*

Whether these pretrial questions as to constitutionality should be answered lies in the discretion of the court. The court deals here with a death penalty statute which consists of fully ten printed pages of complex provisions. Further, the court is confronted with two reported questions from the trial judge which together ask, in the broadest possible terms, whether the death penalty statute is "in compliance with" the Federal and State Constitutions. No specific challenge to the constitutionality of the statute has been raised below by the defendants.[4]

---

[4] The legislative and executive branches did not ask the Justices of this court for an advisory opinion when c. 554 was in preparation for enactment. Indeed, if questions as general as those proffered here had been posed in a request for an advisory opinion, the Justices would probably have respectfully declined to answer them, and for appropriate reasons. See *Answer of the Justices,* 375 Mass. 847, 850 (1978), and cases cited; *Opinion of the*

The above facts would provide rational support for a decision by this court to forgo all consideration of the statute at this time. There are other reasons to support such a conclusion. If the defendants here concerned, or any other defendants charged with murder in the first degree, were ever to be sentenced to death, some of the many constitutional issues now argued may be inapplicable after the cases are tried. Any attempt by the court toward a broad constitutional review may lead to a morass of speculation. Many of these issues ought properly to be considered only after trial and on the basis of a fully developed factual presentation.

On the other hand, the reasons are even more compelling for the course the court has chosen. A majority of the court has concluded that the statute is facially unconstitutional under the *Jackson* principle; no death sentence imposed under this statute can stand. If it is assumed that the Legislature may intend to construct a constitutional death penalty statute, it is preferable that the court should speak now rather than a year or several years hence when these defendants, or some other defendants, present their cases on appeal. The public interest and the interests of the parties would not be well served if these, and perhaps other cases as well, are allowed to proceed in the lengthy and complex statutory death penalty procedure, while this court remains silent. By reason of the course we have chosen, the opinion of this court, as well as the briefs of the many persons and organizations who have addressed the court in this case, are available to the Legislature and to any other concerned persons.

WILKINS, J. (dissenting). We should not answer the reported questions. Four years ago, when a district attorney sought this court's decision on the constitutionality of a capital punishment statute, I said that "I alone among my colleagues believe that this court, in its discretion, should not pass on the constitution-

*Justices,* 368 Mass. 849, 852 (1975); *Opinion of the Justices,* 333 Mass. 773, 782 (1955).

ality of the capital punishment statute." *District Attorney for the Suffolk Dist.* v. *Watson,* 381 Mass. 648, 673 (1980) (Wilkins, J., concurring). Two colleagues now agree with me that it is premature to answer questions of the same general character. *Post* (Nolan, J., dissenting, with whom Lynch, J., joins). They go forward, however, as I did in 1980, to comment on substantive issues. I decline to do so.

The issues should be decided, when and if they arise, in specific cases. The court's approach unnecessarily "presents a constitutional confrontation between its views and those of the Legislature. I would have preferred not to identify such a conflict unless and until the circumstances of a particular case made it unavoidable." *District Attorney for the Suffolk Dist.* v. *Watson, supra* at 674 (Wilkins, J., concurring).

NOLAN, J. (dissenting, with whom Lynch, J., joins). I dissent from the court's conclusion that St. 1982, c. 554, is unconstitutional under the Massachusetts Constitution. For starters, I believe that the court addresses the issue prematurely. A more appropriate occasion to consider the question would be in an actual case where a defendant has been sentenced to death. In that posture, the case would permit appellate responses to the "as applied" attacks on the statute as well as to the facial attacks. The fact that the Legislature has not requested an advisory opinion from the Justices on the statute's constitutionality "suggests [its] preference that the death penalty statute be tested in a real, and not a hypothetical, proceeding." *District Attorney for the Suffolk Dist.* v. *Watson,* 381 Mass. 648, 674 n.2 (1980) (Wilkins, J., concurring).

Without veering in the least from my position as to the prematurity of the court's opinion, I venture to respond to the court's opinion because of the importance of the question. The court's interpretation of art. 116 of the Amendments to the Massachusetts Constitution and St. 1982, c. 554, §§ 3 & 6, contravenes the desires of the citizens of Massachusetts and the court's duty to construe laws, when possible, so as to avoid the conclusion that they are unconstitutional. The court inter-

prets the language of art. 116, which provides that no language of the Massachusetts Constitution "shall be construed as prohibiting the imposition of the punishment of death," as merely a reversal of *District Attorney for the Suffolk Dist.* v. *Watson, supra* at 665, in which the court declared the death penalty impermissibly cruel under art. 26 of the Declaration of Rights. Forewarned by the language of *Watson,* the people made it clear that the capital punishment statute must escape invalidation by any article of the Massachusetts Constitution. Therefore, the amendment should act as a bar to State constitutional scrutiny.

The court, despite the clear language of art. 116, concludes, through a strained reliance on the definition of "prohibit," that the amendment only prevents the court from construing any provision of the Massachusetts Constitution as forbidding the imposition of the death penalty. I cannot comprehend how the phrase, "[n]o provision of the Constitution . . . shall be construed as prohibiting the imposition of the punishment of death," could be interpreted to mean other than that the court cannot invalidate the statute under the State Constitution. The phrases and words of an amendment to the Constitution should "be read and construed according to the familiar and approved usage of the language." *Yont* v. *Secretary of the Commonwealth,* 275 Mass. 365, 366-367 (1931).

Furthermore, the court's concern with the possibility that art. 116, if given the interpretation I suggest, may prevent State constitutional scrutiny of death penalty statutes for shoplifting is groundless. The short answer to this concern is that we are not dealing with shoplifting. The statute addresses only murder in the first degree. There is no need to speculate about matters not before us at this time. Moreover, there is no reason to discount the United States Constitution, which provides adequate safeguards against such blatantly unconstitutional excesses.

The court also errs in deciding that St. 1982, c. 554, unconstitutionally infringes upon the defendants' right to trial by jury and the right not to plead guilty. The court disregards its duty to construe statutes, when possible, in a manner consistent with constitutionality. *Commonwealth* v. *Joyce,* 382 Mass.

222, 226 n.5 (1981). To that end, the court "shall indulge every rational presumption in favor of the statute's validity." *Commonwealth* v. *Gagnon,* 387 Mass. 567, 569 (1982). Only where the language is so explicit and clear that a constitutional interpretation is impossible, should a court invalidate a statute. *Commonwealth* v. *Lammi,* 386 Mass. 299, 301 (1982). I suggest that St. 1982, c. 554, may be interpreted constitutionally.

The court relies on *United States* v. *Jackson,*[1] 390 U.S. 570 (1968), by analogy, to invalidate St. 1982, c. 554. In *Jackson, supra,* the Court held that the Federal Kidnaping Act, 18 U.S.C. § 1201 (a) (1964), was invalid because it imposed an impermissible burden upon an accused's exercise of his Fifth Amendment right not to plead guilty and his Sixth Amendment right to demand a trial by jury. *Jackson, supra* at 581-583. The statute provided that a defendant would be sentenced to death if the kidnaped person had not been liberated unharmed and if the jury recommended death in their verdict. *Id.* at 571. Statute 1982, c. 554, which differs significantly from the Federal Kidnaping Act, 18 U.S.C. § 1201 (a) (1964), provides: "Whoever is guilty of murder committed with deliberately premeditated malice aforethought or with extreme atrocity or cruelty . . . may suffer the punishment of death." This language does not distinguish between those defendants found guilty by a jury verdict and those who plead guilty. The language of G. L. c. 279, § 68, inserted by St. 1982, c. 554, § 6, read in connection with this language, renders a constitutionally permissible result.

The statute can be read to justify the following agenda. In a jury trial, the jury must specify the basis for a conviction of

---

[1] It is interesting to note that in *North Carolina* v. *Alford,* 400 U.S. 25 (1970), decided nineteen months after *Jackson,* the United States Supreme Court rejected the authority of *Jackson,* on which the defendant in *Alford* relied (and on which this court relies today for analogical purposes). In *Alford,* the United States Supreme Court upheld the acceptance of a plea of guilty of murder in the second degree despite the defendant's protest that he was innocent and pleaded guilty only to avoid the death penalty which, under North Carolina law, could be imposed only following a jury verdict.

murder in the first degree. If the jury specify murder in the first degree with deliberate premeditation or with extreme atrocity or cruelty, the judge must then conduct a presentence hearing. The trial jury in most cases will pass on the issue of sentencing. However, where "it is impossible or impracticable for the trial jury to sit at the presentence hearing, a new jury shall be impanelled to sit at the presentence hearing." Thus, in those instances where a defendant pleads guilty, no jury shall have sat and the trial judge is provided with the power to empanel a jury for sentencing. This interpretation provides for capital punishment regardless of the manner in which a defendant is adjudged guilty.

Unlike the Federal Kidnaping Act, 18 U.S.C. § 1201 (a) (1964), which was reviewed in *United States* v. *Jackson, supra,* and which did not authorize a subsequent sentencing hearing, G. L. c. 279, § 68, inserted by St. 1982, c. 554, § 6, provides a comprehensive scheme for a presentence hearing. Therefore, this interpretation would not "create from whole cloth a complex and completely novel procedure." *Jackson, supra* at 580.

By way of epilogue, it is regrettable that the court, having decided to take the case before trial, has responded to only one of the arguments. The defendants have mounted other attacks on the death penalty statute and the Commonwealth has responded to them. I hope that this selective appellate processing does not presage a continual piecemeal treatment of a subject on which the people and the Legislature have made their voices heard so loudly and clearly. It seems to me that they have a right to an adjudication on all the parts of the statute which the court considers constitutionally vulnerable and which have been addressed in the briefs.

This case is not the typical adversary appellate proceeding after adjudication in which the court generally (though not always) limits itself to the issue dispositive of the matter. See *Attorney Gen.* v. *Dover,* 327 Mass. 601, 608 (1951). By taking this case before an adjudication on the merits, the court has undertaken to write an opinion which, for all practical purposes, is not trenchantly different from an advisory opinion. It is settled that the court will answer all proper questions raised

in the request for an advisory opinion if there is a "solemn occasion." See *Opinion of the Justices,* 354 Mass. 804, 808 (1968). The court should do no less in this case.